# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

CHET MICHAEL WILSON, individually and
on behalf of all others similarly situated,

Plaintiff,

*v.*

EASY SPIRIT, LLC,

Defendant.

Case No.: 25-cv-00112-SFR

**ORAL ARGUMENT REQUESTED**

April 28, 2025

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

KASOWITZ BENSON TORRES LLP
Christine A. Montenegro (ct30008)
Lea Dartevelle Erhel (pro hac vice)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
E-mail: cmontenegro@kasowitz.com
        ldartevelle@kasowitz.com

FINN DIXON & HERLING LLP
Tony Miodonka (ct28262)
Six Landmark Square
Stamford, CT 06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: tmiodonka@fdh.com

Attorneys for Defendant Easy Spirit, LLC

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 4

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

I.      The Complaint Fails To State A Claim For A Violation Of Section 227(c) of The TCPA ................................................................................................................... 6

     A.      The TCPA's Section 227(c) Applies Only to "Residential Telephone Subscribers," Not Cellular Numbers ........................................................... 6

     B.      The TCPA's Section 227(c) Applies Only to "Telephone Calls," Not Text Messages ...................................................................................................... 9

     C.      The FCC's 2003 and 2023 Orders Supposedly Extending Section 227(c) to Cellular Phones and Text Messages Are Purely Interpretive, Not Binding, and Inconsistent with the Statutory Text ......................................................... 10

II.     In the Alternative, This Court Should Stay Proceedings Pending the Supreme Court's Decision in *McLaughlin* .................................................................... 14

CONCLUSION ................................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)................................................................................................5

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S. Ct. 2335 (2020)................................................................................................8

*Collins v. Yellen*,
141 S. Ct. 1761 (2021)..............................................................................................12

*Cunningham v. Arco Media Inc.*,
No. 4:19-CV-00901-RWS-CAN, 2020 WL 2310021 (E.D. Tex. Apr. 3, 2020).......................9

*Cunningham v. Carribean Cruise Lines, Inc.*,
No. 15-62580-CIV-MORENO, 2016 WL 7494871 (S.D. Fla. Dec. 29, 2016)..................8, 15

*Cunningham v. Creative Edge Mktg. LLC*,
No. 419CV00669ALMCAN, 2021 WL 2792353 (E.D. Tex. June 16, 2021) ...........................8

*Cunningham v. Enagic USA, Inc.*,
No. 3:15-0847, 2017 WL 2719992 (M.D. Tenn. June 23, 2017) ............................................9

*Cunningham v. Rapid Cap. Funding, LLC*,
No. 3:16-02629, 2017 WL 3574451 (M.D. Tenn. July 27, 2017) ...........................................9

*Cunningham v. Spectrum Tax Relief, LLC*,
No. 3:16-2283, 2017 WL 3222559 (M.D. Tenn. July 7, 2017) ..............................................9

*Cunningham v. Sunshine Consulting Grp., LLC*,
No. 3:16-2921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) ............................................9

*Dixon v. United States*,
85 S. Ct. 1301 (1965)...............................................................................................13

*Facebook, Inc. v. Duguid*,
141 S. Ct. 1163 (2021)................................................................................................8

*Hamdan v. Rumsfeld*,
126 S. Ct. 2749 (2006), *superseded by statute on other grounds* ...........................................12

*Isaacs v. USHEALTH Advisors, LLC*,
No. 3:24-cv-00216-TCB, Dkt. 25 (N.D. Ga. Mar. 1, 2025) ...................................................16

*Isaacs v. USHealth Advisors, LLC*,
  No. 3:24-cv-00216-TCB, Dkt. No. 25 (N.D. Ga. Mar. 1, 2025) ...............................................4

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) .........................................................................................................2, 3, 13

*Loudermilk v. Maelys Cosmetics USA Inc.*,
  No. 1:24-cv-01866-AT (N.D. Ga. Oct. 15, 2024) .............................................................4, 16

*Lozano v. Twentieth Century Fox Film Corp.*,
  702 F. Supp. 2d 999 (N.D. Ill. 2010) ...................................................................................14

*Mastafa v. Chevron Corp.*,
  770 F.3d 170 (2d Cir. 2014) ....................................................................................................5

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  145 S. Ct. 116 (2024) ..................................................................................................... *passim*

*Morgan v. U.S. Xpress, Inc.*,
  No. 3:17-cv-00085, 2018 WL 3580775 (W.D. Va. July 25, 2018) .......................................15

*Pariseau v. Built USA, LLC*,
  619 F. Supp. 3d 1203 (M.D. Fla. 2022) ...........................................................................13, 14

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
  139 S. Ct. 2051 (2019) ......................................................................................................12, 13

*Pileggi v. Mathias*,
  No. 3:22-CV-1315 (AWT), 2023 WL 5437139 (D. Conn. Aug. 23, 2023) .............................6

*Russello v. United States*,
  104 S. Ct. 296 (1983) ...........................................................................................................12

*Shelton v. Fast Advance Funding, LLC*,
  378 F. Supp. 3d 356 (E.D. Pa. 2019) ......................................................................................8

*Shelton* v. *Pro Source Lending Grp.*,
  No. 2:24-cv-04394, Dkt. No. 33 (E.D. Pa. Apr. 14, 2025) ................................................4, 16

*Soliman v. Subway Franchisee Advert. Fund Trust Ltd.*,
  No. 3:19-cv-00592, 2022 WL 2802347 (D. Conn. July 18, 2022) ...................................10, 17

*In re Trilegiant Corp., Inc.*,
  11 F. Supp. 3d 82 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Group,
  LLC*, 889 F.3d 116 (2d Cir. 2018) ..........................................................................................4

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
  603 F. Supp. 3d 1334 (S.D. Fla. 2022) .......................................................................... *passim*

*Wood & Bricks, LLC v. TD Dev., LLC*,
  No. 3:16-CV-123 (MPS), 2018 WL 6605623 (D. Conn. Dec. 17, 2018) ................................ 5

**Statutes**

28 U.S.C. § 2241 ................................................................................................ 12

47 U.S.C. §§ 227(b)(1)(A)(iii) ..................................................................... 2, 6, 7

47 U.S.C. § 227(c)(1) ........................................................................................... 7

47 U.S.C. § 227(c)(3) .................................................................................. 6, 7, 11

47 U.S.C. § 227(c)(5) .................................................................................. *passim*

47 U.S.C. § 227(e)(1) ........................................................................................ 10

Pub. L. No. 109-366, § 7, 120 Stat. 2600, 2635-36 (2006) ............................... 12

Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ............................ *passim*

**Other Authorities**

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  CG Docket No. 02-278, 18 F.C.C.R. 14014 (July 3, 2003) ............................ 2, 11

*In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
  38 F.C.C.R. 2744 (2023) ......................................................................... 1, 2, 11

47 C.F.R. § 64.1200 (c) .............................................................................. 7, 11

47 C.F.R. § 64.1200(c)(2) .......................................................................... 1, 7, 11

47 C.F.R. § 64.1200(d) ........................................................................................ 8

Federal Rules of Civil Procedure Rules 8 and 12 .............................................. 1

## PRELIMINARY STATEMENT

Defendant Easy Spirit, LLC ("Easy Spirit") respectfully submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint (Dkt. No. 24, the "FAC") in its entirety pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure.

In this case, Plaintiff Chet Michael Wilson ("Wilson"), a serial litigant who has filed more than 34 TCPA class actions within the past five months, asserts a single claim for alleged willful violation of the do-not-call ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) ("§ 227(c)").

Plaintiff's claim fails because it seeks to impose an impermissibly broad reading of § 227(c) to create a private right of action based on unsolicited *text messages* sent to a *cellular* telephone number, even though § 227(c)(5) expressly limits private enforcement to "telephone calls" directed to "residential telephone subscribers" listed on the DNC Registry. *See* § 227(c)(5).

First, the unambiguous statutory language of § 227(c) only protects "residential telephone subscribers." The DNC provision set forth in 47 C.F.R. § 64.1200(c)(2) prohibits calls made to a "*residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry. . . ." Thus, the private right of action created by § 227(c)(5) is limited to redress for *calls* made to *residential* telephone subscribers on the DNC registry, as opposed to cellular subscribers.

Second, the statute's language is clear: § 227(c)(5) protects only against "telephone calls." Specifically, the TCPA only allows for a private right of action for "a person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. § 227(c)(5) (emphasis added). It does not extend to text messages or to cellular numbers, particularly when read in the context of other TCPA provisions that expressly regulate "text messages." *See e.g.,* 47 U.S.C. §§ 227(b)(1)(A)(iii); 227(e). Here,

because Plaintiff admits that he only received text messages to his cellular phone – as opposed to calls to a residential line – Plaintiff's claim fails as a matter of law.  (FAC ¶¶ 2, 18, 20).

To circumvent the statute's plain text, Plaintiff relies on two non-legislative agency interpretations: (1) the FCC's 2003 Order, *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 18 F.C.C.R. 14014 (July 3, 2003) (the FCC "2003 Order") which expanded the definition of "residential subscribers" to cellular phone numbers, and (2) the FCC's 2023 Order, *In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C.R. 2744 (2023) (the FCC "2023 Order") (collectively, the "FCC Orders"), which improperly expanded the statutory definition of "telephone calls" to text messages.

Although lower courts previously treated FCC Orders as binding under the Hobbs Act and thus deferred to the FCC's expansive interpretations (even while expressing skepticism), those precedents were rendered infirm by the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).  Under *Loper Bright*, courts are no longer required to defer to agency interpretations when construing the meaning of statutes such as the TCPA.  *Id.* at 2263. Rather, courts must perform an independent analysis of the statute's text and congressional intent. *Id.*  Consequently, prior decisions that reflexively deferred to FCC interpretations of § 227(c) under the Hobbs Act must now yield to a direct judicial interpretation of the statute's language.

Conducting an independent analysis, this Court should find that Congress, when it created a private right of action for "telephone calls" to "residential subscribers" under § 227(c)(5), did not authorize claims based on text messages sent to cellular numbers.  Congress knew how to regulate text messages elsewhere under the TCPA (such as in § 227(b) and § 227(e)) but did not do so in § 227(c). Here, Congress only granted the FCC with authority to create a registry for

"residential subscribers"—not wireless or cellular subscribers.  Thus, the FCC exceeded its authority in the 2003 Order by improperly extending § 227(c)'s protections to cellular phones, a category Congress deliberately excluded.  Therefore, this Court may not rely upon the non-binding 2003 Order when determining the protections afforded by the statute.  For these reasons, Plaintiff's claim should be dismissed for failure to state a claim under the plain text of § 227(c).

Finally, and alternatively, as discussed in the Motion to Stay or Bifurcate filed with this Court (Dkt. No. 23), this action should be stayed pending the Supreme Court's forthcoming decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 116 (2024) ("*McLaughlin*").  That case, argued in January 2025 and expected to be decided by July 2025 addresses the impermissible breadth of the same FCC 2003 Order forming the basis of Plaintiff's claim here, and will resolve whether the Hobbs Act compels district courts to adopt the FCC's interpretation of the TCPA.  If, as anticipated, the Supreme Court in *McLauglin* holds that courts may disregard the FCC's non-legislative interpretations in the FCC 2003 Order,  then the 2003 order would no longer be available to support Plaintiff's claim that (1) a cellular phone qualifies as a residential subscriber, and (2) text messages are encompassed as "telephone calls" under § 227(c).  In other words, Plaintiff's claims would fail as a matter of law because the unambiguous statutory language of § 227(c) does not provide a private right of action for text messages sent to cellular phones.  Easy Spirit respectfully requests that, if it is not inclined to dismiss this case outright, this Court briefly stay this action (under three months) to conserve judicial and party resources, avoid inconsistent rulings, and serve the interests of fairness and efficiency.  Federal courts have already stayed analogous TCPA cases pending the outcome of *McLaughlin*.  *See Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-TCB, Dkt. No. 25 (N.D. Ga. Mar. 1, 2025); *Shelton* v. *Pro Source Lending Grp.,* No. 2:24-cv-04394, Dkt. No. 33 (E.D. Pa. Apr. 14, 2025)

(unreported); *Loudermilk v. Maelys Cosmetics USA Inc.*, No. 1:24-cv-01866-AT (N.D. Ga. Oct. 15, 2024). This Court should stay this action as well.

## STATEMENT OF FACTS

Plaintiff is a serial TCPA Plaintiff who has filed no less than 36 TCPA-based complaints in the past five months alone.[1]

Upon information and belief, Plaintiff purchased the cellular phone number 541-XXX-9999 for the purpose of filing, and profiting from, TCPA-based statutory claims and damages.

On January 22, 2025, Plaintiff filed his initial Complaint, which suffered from multiple deficiencies, including failing to allege that the phone number at issue was a residential phone. Dkt. 1 ("Complaint").

On April 12, 2025, following Easy Spirit's first Motion to Dismiss, Plaintiff amended his Complaint to allege that the subject telephone number is a residential line. Dkt. No. 24. He also alleges that he is the "subscriber to and customary user of the cellular telephone number (541) XXX-9999" ("Phone Number") to which the subject text messages were delivered. Dkt. 24 (the "First Amended Complaint" or "FAC") at ¶ 9. Plaintiff alleges that he "had registered his number on the National Do Not Call Registry for at least 30 days prior to receiving the calls at issue." FAC at ¶ 16. He also claims, in conclusory fashion, that he did not provide prior express consent for the messages. *Id*. at ¶ 23.

---

[1] This Court may at the motion to dismiss stage "judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court." *In re Trilegiant Corp., Inc.,* 11 F. Supp. 3d 82, 129 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Group, LLC*, 889 F.3d 116 (2d Cir. 2018). *See* Docket Numbers 2:2025cv00212; 2:2025cv00278; 3:2025cv00260; 3:2025cv00802; 3:2025cv00157; 1:2025cv00340; 3:2025cv00112; 8:2024cv02711; 1:2025cv00023; 0:2024cv62319; 1:2024cv25117; 1:2024cv25119; 0:2025cv60212; 1:2025cv00003; 1:2024cv12950; 1:2024cv03665; 5:2025cv00522; 2:2025cv00039; 6:2024cv01826; 6:2024cv01855; 6:2024cv01956; 1:2024cv02087; 6:2025cv00043; 6:2025cv00144; 6:2025cv00152; 6:2025cv00173; 6:2025cv00333; 6:2025cv00376; 6:2025cv00410; 2:2025cv02347; 1:2024cv01917; 1:2024cv02339; 2:2025cv00048; 3:2024cv00782; 3:2024cv00924; 2:2025cv00745.

However, despite amending the Complaint, Plaintiff still does not allege that Easy Spirit made any calls to his residential line nor provide any facts in support of his allegation that Easy Spirit made "calls" to the Phone Number. FAC at ¶¶ 18-23. Plaintiff only discusses and puts forward evidence of text messages. *Id*.

Finally, Plaintiff's allegation that Easy Spirit's conduct is supposedly "willful" is unsupported by any factual allegations, relying instead on legal conclusions.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974(2007)). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal quotations and citation omitted); *Wood & Bricks, LLC v. TD Dev., LLC,*  No. 3:16-CV-123 (MPS), 2018 WL 6605623, at *2 (D. Conn. Dec. 17, 2018) ("A court need not accept legal conclusions as true and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal quotations omitted). This means that a plaintiff must offer "more than labels and conclusions," "a formulaic recitation of the elements of a cause of action," and/or "naked assertions devoid of further factual enhancement." *Pileggi v. Mathias*,  No. 3:22-CV-1315 (AWT), 2023 WL 5437139, at *1 (D. Conn. Aug. 23, 2023). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

## ARGUMENT

**I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF SECTION 227(C) OF THE TCPA**

Plaintiff purports to bring a putative class action over alleged text messages sent to his cellular phone number to which he allegedly did not consent.  Notably, Plaintiff does not allege that he opted out of receiving such texts by replying with "Stop" (as instructed by the texts).  FAC ¶¶ 19-23.  The sole TCPA claim is based on the allegation that plaintiff registered his cellular phone number on the national DNC registry.

Those admissions alone compel dismissal as a matter of law for two reasons: (i) § 227(c) only provides a private right of action for "residential telephone subscribers" listed on the DNC list, not cellular phones, and (ii) § 227(c) only provides a private right of action for "telephone calls," not text messages.  FAC ¶¶ 1, 16, 18-23.

### A.    The TCPA's Section 227(c) Applies Only to "Residential Telephone Subscribers," Not Cellular Numbers

The TCPA expressly states that the protections afforded under § 227(c) apply to "telephone calls" placed to "residential telephone subscribers," not cellular phones.  *See* 47 U.S.C. § 227(c). Calls to *cellular* phone numbers as well as text messages are governed by a different provision of the TCPA that restricts the use of automated calls.  *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls made using an automatic telephone dialing system ("auto dialer") or an artificial or prerecorded voice to phone numbers assigned to a "cellular telephone service").

When Congress authorized the FCC to create the national DNC Registry, it confined that authority to "*residential* telephone subscribers." 47 U.S.C. § 227(c)(3) (emphasis added). Accordingly, the FCC established the national DNC Registry and prohibited any person or entity from initiating any "telephone call" solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not

wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §64.1200(c)(2).[2]  Based on these restrictions, the TCPA allows for a private right of action for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5). Thus, the statute and the implementing regulation under 47 C.F.R. § 64.1200 (c) only restrict "calls" made to a "residential" number subscriber on the DNC Registry.

This reading of the statute is supported by the TCPA's other provisions that unambiguously distinguish between "residential" and "cellular" telephone lines. For example, 47 U.S.C. § 227(b)(1)(A)(iii) restricts calls made using "an artificial or prerecorded voice" to cellular phone lines. Thus, Congress knew how to reference cellular telephones—indeed, it did so in § 227(b)(1)(A)(iii)—but it intentionally omitted any such reference in § 227(c).

Accordingly, when Congress granted the FCC authority to promulgate regulations under the TCPA to create the DNC Registry, it "intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.,* 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022). The U.S. Supreme Court also recognized that distinction (albeit in connection with other TCPA subsections). In *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the Supreme Court held that the TCPA "separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home

---

[2] The DNC provision set forth in 47 C.F.R. § 64.1200(c)(2) prohibits calls made to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." The regulation was promulgated under § 227(c) of the TCPA which directs the FCC to engage in rulemaking "concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (italics added). Pursuant to the FCC's authority, under § 227(c)(2), to adopt regulations "to implement methods and procedures for protecting the privacy rights described in [§ 227(c)(1)]," the Commission "may require the establishment and operation of a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations . . . ." *Id.* § 227(c)(3) (italics added). The TCPA creates a private right of action for an alleged "violation of the regulations prescribed under this subsection . . . ." *Id.* § 227(c)(5).

phones and cell phones," making clear that the TCPA treats *residential* phone lines as distinct from *cellular* phone lines. *Id.* at 1173.  In *Barr v. Am. Ass'n of Pol. Consultants, Inc*., 140 S. Ct. 2335 (2020), the Supreme Court referred to  "residential landlines" and "cell phones" separately).  *Id*. at 2263.

While there is no controlling Second Circuit case deciding whether § 227(c) applies to text messages to cell phone numbers, several courts have expressed skepticism or found that the regulation does not encompass cell phones.  *See, e.g., Cunningham v. Creative Edge Mktg. LLC*, No. 419CV00669ALMCAN, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021) (ruling that "Plaintiff has not provided a sufficient basis to proceed on his claim under § 227(c)(5) of the TCPA and 47 C.F.R. § 64.1200(d)" which applies "to a residential telephone subscriber" and "does not encompass Plaintiff's cell phone"), *R. & R. adopted,* No. 4:19-CV-669, 2021 WL 3048400 (E.D. Tex. July 20, 2021); *Cunningham v. Carribean Cruise Lines, Inc.,*  No. 15-62580-CIV-MORENO, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) ("While Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone numbers."); *Shelton v. Fast Advance Funding, LLC,* 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (concluding, without deciding the issue, that "the plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere.  Furthermore, the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(l)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d). . . The Court, therefore, is not convinced that Congress and the FCC, through the TCPA and its regulations, intended to protect 'cellular telephone subscribers' along with 'residential telephone

subscribers.'"); *Cunningham v. Spectrum Tax Relief, LLC,* No. 3:16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017) (ruling, based on the "plain language" of the TCPA regulation, that plaintiff cannot state a claim because "[t]he private right of action created by 47 U.S.C. § 227(c)(5) is . . . limited to redress for violations of the regulations that concern residential telephone subscribers," and plaintiff alleges only calls to his cell phone), *R. & R. adopted,* 2017 WL 3220411, at *1 (July 28, 2017).[3]

### B.    The TCPA's Section 227(c) Applies Only to "Telephone Calls," Not Text Messages

Even if Plaintiff could qualify as a "residential subscriber" (he cannot), Plaintiff's FAC should also be dismissed because the plain language of §227(c)(5) confers a private right of action solely for the receipt of "telephone calls," not text messages.

The statutory text is unambiguous in this regard, granting a right of action to "[a] person who has received more than one ***telephone call*** within any 12-month period … in violation of the regulations prescribed under this subsection." § 227(c)(5) (emphasis added).  Plaintiff cannot assert a claim under § 227(c) based on alleged text messages sent to his cellular phone number because the statute restricts "*telephone call[s]*" made to a *residential telephone subscriber,* and does not include text messages to a cellular phone subscriber.

The text and structure of the TCPA makes clear that "telephone calls" do not encompass text messages.  Where Congress intended to regulate text messages, it did so expressly and separately from telephone calls.  This distinction is most evident in § 227(e), which directly governs misleading caller identification in connection with both "voice service" and "text

---

[3] *See also Cunningham v. Arco Media Inc.,* No. 4:19-CV-00901-RWS-CAN, 2020 WL 2310021, at *4 (E.D. Tex. Apr. 3, 2020), *R. & R. adopted,* No. 4:19-CV-00901-RWS-CAN, 2020 WL 2306589 (E.D. Tex. May 8, 2020); *Cunningham v. Sunshine Consulting Grp., LLC,* No. 3:16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Cunningham v. Rapid Cap. Funding, LLC,* No. 3:16-02629, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017); *Cunningham v. Enagic USA, Inc.,* No. 3:15-0847, 2017 WL 2719992, at *5-6 (M.D. Tenn. June 23, 2017).

messaging service." *See* 47 U.S.C. § 227(e)(1) (stating that "[i]t shall be unlawful for any person … in connection with any voice service or text messaging service …."). Congress further defined the term "text message" as "a message consisting of text, images, sounds, or other information that is transmitted to or from a device," explicitly excluding "a real-time, two-way voice or video communication." *Id.* § 227(e)(8)(C). Likewise, "text messaging service" is separately defined as "a service that enables the transmission or receipt of a text message." § 227(e)(8)(D).

In this District, courts have acknowledged that distinction. In *Soliman v. Subway Franchisee Advert. Fund Trust Ltd.,* No. 3:19-cv-00592, 2022 WL 2802347 (D. Conn. July 18, 2022), the court noted that text messages are not "voice" communications under § 227(b). Here, Plaintiff is alleging that when the TCPA prohibited telephone calls, it also prohibited texts. Not so. And because Plaintiff's allegations are premised entirely on text messages, his claim under § 227(c)(5) fails as a matter of law. FAC ¶¶ 2, 18, 20-23.

### C.    The FCC's 2003 and 2023 Orders Supposedly Extending Section 227(c) to Cellular Phones and Text Messages Are Purely Interpretive, Not Binding, and Inconsistent with the Statutory Text

Plaintiff's claim, and much of the legal precedents regarding text messages to cellular numbers, relies entirely on two non-binding FCC interpretive rulings. First, in 2003, the FCC issued an order presuming that wireless subscribers who registered for the DNC Registry should be treated as "residential subscribers." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 F.C.C.R. 14014 (July 3, 2003) (the "2003 Order").[4] Second, in 2023, the FCC issued an order purporting to extend the

---

[4] In the 2003 Order, the FCC stated that it "will presume wireless subscribers who ask to be put on the [DNC Registry] to be 'residential subscribers.'" 18. F.C.C.R. 14014, 14039. The FCC exceeded its authority in the 2003 Order by extending the rule in 47 C.F.R. 64.1200(c)(2) to cover "wireless telephone numbers." *see* 64.1200(e). Congress did not authorize the FCC to create a registry for wireless or cellular subscribers and only authorized the FCC to create a registry for "residential subscribers." § 227(c)(3). This limitation is reflected in the implementing regulation under § 64.1200(c) which applies to only "residential telephone subscriber[s]," and does not refer to wireless or cellular subscribers.

DNC Registry protections to text messages under § 227(c).  See FCC 2023 Order, *In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C.R. 2744 (2023).

But the FCC lacked authority to expand § 227(c) beyond its plain text to cellular numbers and text messages.  *See Turizo*, 603 F. Supp. 3d at 1340–41 ("The FCC's assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers.").  As detailed above, Congress drew deliberate distinctions between "residential telephones" and "cellular telephones," and between "telephone calls" and "text messages," throughout the TCPA.  Accordingly, the only appropriate conclusion is that it intentionally omitted any reference to cellular telephones in § 227(c).  *See, e.g., Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021) ("when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").[5]

Although some courts have cited the FCC Orders in extending § 227(c) to cellular phones and text messages, those decisions are fundamentally flawed.  They deferred to non-legislative, interpretive agency rules issued without congressional authorization—and critically, they did so without conducting any independent statutory analysis.  No court has meaningfully examined whether the FCC's expansion is legally permissible under the statute.  Those courts that have carefully considered the issue, such as *Turizo*, have expressed clear skepticism toward the FCC's unauthorized expansion.

---

[5] *See also Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2765 (2006) ("A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."), *superseded by statute on other grounds*, Pub. L. No. 109-366, § 7, 120 Stat. 2600, 2635-36 (2006) (amending 28 U.S.C. § 2241); *Russello v. United States*, 104 S. Ct. 296, 300 (1983) ('[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

But courts are no longer obligated, or even permitted, to defer to such agency interpretations in the wake of *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*., 139 S. Ct. 2051 (2019) ("*PDR Network*") and *Loper Bright*In *PDR Network*, the Supreme Court emphasized that district courts must first assess whether the agency's rule is legislative (and binding) or merely interpretive (and non-binding).  "[I]f the relevant portion of the … Order is the equivalent of an 'interpretive rule,' it may not be binding on a district court."  *PDR Network,* 139 S. Ct. at 2055.  The FCC Orders at issue here merely "advis[es] the public of the agency's construction of the statutes and rules which it administers" and lack the "force and effect of law."  *Id*.  Any lingering doubt was eliminated by the Supreme Court's decision in *Loper Bright*, which reaffirmed that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters.*, 144 S. Ct. at 2273.

*Loper Bright* confirmed that even when faced with statutory ambiguity, courts may not defer to agency interpretations absent express congressional delegation.  Here, Congress authorized the FCC to regulate only "telephone solicitations" to "residential" subscribers, and provided a private right of action under § 227(c) only for "telephone calls" rather than for text messages or for communications to cellular subscribers.

The FCC's attempt to unilaterally expand that authority to cover cellular phones, without any statutory text to support it, is void.  *See Dixon v. United States*, 85 S. Ct. 1301, 1305 (1965) (a regulation that conflicts with the statute it purports to interpret "is a mere nullity").

Notably, the few courts that have independently examined the 2003 Order have recognized its improper scope.  In *Turizo*, the court correctly observed that "the FCC's assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers." *Turizo*, 603 F. Supp. 3d at 1341.  The court emphasized that the FCC's

presumption that wireless numbers should be treated as "residential" numbers effectively imposed new liability without congressional authorization.[6]  In *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203 (M.D. Fla. 2022), the court acknowledged the unauthorized expansion but concluded, under then-existing Hobbs Act constraints, that it was bound to enforce the FCC's interpretation. *See id*. at 1207.  This underscores the problem: where courts have analyzed the statute independently, skepticism, not deference, has prevailed.[7]

Rejecting the FCC Orders' improper expansion would align with the TCPA's privacy objectives.  The DNC Registry was established to prevent the disruptive and intrusive nature of repeated telephone calls, "live calls," to consumers' homes and personal devices.  Extending the statutory protections of §227(c) to text messages on cell phones undercuts the statute's narrow purpose and risks overregulation of communication modes that do not implicate the same privacy concerns.  The Court should decline to adopt an interpretation that rewrites the statutory language.

Ultimately, the statutory text controls.  For the same reasons that courts have rejected the FCC's earlier attempt to rewrite § 227(b) as *ultra vires*, the same result should follow with respect to the FCC's 2023 Order.  *See Turizo*, 603 F. Supp. 3d at 1341.

Moreover, this very issue is now pending before the U.S. Supreme Court in *McLaughlin*, 145 S. Ct. 116 (2024)  (argued Jan. 21, 2025), which is expected to resolve, by July 2025, whether district courts must defer to FCC interpretations of the TCPA.  Given the direction of recent

---

[6] The court in *Turizo*, 603 F. Supp. 3d at 1341, ultimately rejected defendant's motion to dismiss for failure to state a claim because "[d]espite an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision, the Court must enforce the rules and regulations set forth by the FCC."  *Id*. at 1342.

[7] Similarly, in *Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999 (N.D. Ill. 2010), the United States District Court for the Northern District of Illinois noted that the FCC was not entitled to complete deference in its interpretation that "call" under the TCPA included text messages.  The court highlighted that the FCC's 2002 Notice of Proposed Rulemaking did not specifically invite comment on text messaging, and the 2003 FCC Rules did not provide any explanation for the FCC's interpretation of § 227 as applicable to text messages.  *Id*. at 1006.

Supreme Court authority, it is highly likely that the FCC's 2003 Order will be deemed non-binding, and courts will be required to perform independent textual analysis of § 227(c).

Plaintiff's allegation that he uses his cell phone for residential and personal purposes (FAC ¶ 11) is immaterial. The statutory scheme plainly differentiates cellular from residential telephones. *See, e.g., Cunningham*, 2016 WL 7494871, at *2 ("[T]he Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing."); *Morgan v. U.S. Xpress, Inc.,* No. 3:17-cv-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) ("Plaintiff's characterization of the cell phone as a 'residential, cellular telephone line' is not determinative of this question. These are not factual allegations, but legal terms drawn from the operative statute. . . . Congress's structural choice to treat these different types of calls differently has been observed by abundant and uniform . . . authority.").

In sum, Plaintiff's claim is predicated on an invalid and non-binding FCC interpretation, inconsistent with the statute, unsupported by Second Circuit or Connecticut authority, and contrary to the independent judgment now required of district courts. Thus, because Congress did not extend § 227(c)'s private right of action to text messages or cellular numbers, Plaintiff's TCPA claim fails as a matter of law.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD STAY PROCEEDINGS PENDING THE SUPREME COURT'S DECISION IN *MCLAUGHLIN*

Even if the Court is not inclined to dismiss the case outright, Easy Spirit respectfully requests a short stay pending the U.S. Supreme Court's decision in *McLaughlin*, which may be dispositive to this action.

The Supreme Court is expected to rule in *McLaughlin* that the FCC's 2003 Order improperly expanded the TCPA's coverage by interpreting "telephone facsimile machines" to

include online fax services, despite the statute's clear textual limitations, and that courts are not required to defer to such agency interpretations. The same FCC 2003 Order, and the more recent 2023 Order, form the basis of Plaintiff's claim by extending § 227(c) to: (1) include wireless users as "residential telephone subscribers" and (2) classify text messages as "telephone calls."

Courts have widely acknowledged the disruptive potential of *McLaughlin* and have granted stays in analogous TCPA actions. *See Isaacs v. USHEALTH Advisors, LLC*, No. 3:24-cv-00216-TCB, Dkt. 25 (N.D. Ga. Mar. 1, 2025) (granting stay pending *McLaughlin*); *Shelton v. Pro Source Lending,* No. 2:24-cv-04394, Dkt. 33 (E.D. Pa. Apr. 14, 2025) (unreported) (staying TCPA action concerning cell numbers on Do Not Call list because *McLaughlin* "may materially impact the district court's analysis"); *Loudermilk v. Maelys Cosmetics USA Inc.,* No. 1:24-cv-01866-AT (N.D. Ga. Apr. 1, 2025) (granting sua sponte stay pending *McLaughlin* where the challenged conduct involved text messages to cellular phones).

If the Supreme Court rejects the deference to non-legislative FCC interpretations, this Court will be required to reexamine the statutory language of § 227(c) independently. Thus far, courts had been bound to defer to the FCC Orders under the Hobbs Act. Despite this (overruled) obligation, courts have long expressed skepticism about the FCC's interpretations. *See Turizo*, 603 F. Supp. 3d at 1342 (recognizing the FCC's "unauthorized expansion" of private rights under § 227(c) but deferring based on the Hobbs Act); *Soliman*, 2022 WL 2802347, at *3 (D. Conn. July 18, 2022) (refusing to extend § 227(b)'s definition of "artificial or prerecorded voice" to include text messages, emphasizing the need to follow the statute's plain language). If these cases are any indication, they suggest that, once this Court conducts the independent analysis required, it is liukely to reject the FCC's attempt to shoehorn text messages to cellular numbers into § 227(c), in contravention of the statute's plain language.

15

Finally, Plaintiff will not be prejudiced by a short three-months' stay. A ruling in *McLaughlin* is expected by July 2025, and Plaintiff has proposed a discovery deadline of February 2026. The stay would not delay that schedule. In contrast, the absence of a stay would require extensive class-related discovery on claims that may soon be deemed invalid as a matter of law.

In sum, a short stay would promote judicial economy and avoid unnecessary litigation on claims that are likely to be foreclosed by the Supreme Court's imminent decision. Accordingly, this Court should stay proceedings pending the resolution of *McLaughlin*—in the alternative to granting Easy Spirit's Motion to Dismiss.

## **CONCLUSION**

For the foregoing reasons, Easy Spirit respectfully requests that the Court dismiss this action, with prejudice. In the alternative, this Court should stay this matter pending the forthcoming U.S. Supreme Court's decision in *McLaughlin*.

Dated: April 28, 2025

                              Respectfully submitted,

                              KASOWITZ BENSON TORRES LLP
                              By: /s/ Christine A. Montenegro
                              Christine A. Montenegro (ct30008)
                              Lea Dartevelle Erhel (pro hac vice)
                              1633 Broadway
                              New York, New York 10019
                              Tel: (212) 506-1700
                              Fax: (212) 506-1800
                              E-mail: cmontenegro@kasowitz.com
                                       ldartevelle@kasowitz.com

                              FINN DIXON & HERLING LLP
                              By: /s/
                              Tony Miodonka (ct28262)
                              Six Landmark Square
                              Stamford, CT 06901-2704
                              Tel: (203) 325-5000

Fax: (203) 325-5001
E-mail: tmiodonka@fdh.com

Attorneys for Defendant Easy Spirit, LLC

## CERTIFICATE OF SERVICE

I certify that on April 28, 2025, a copy of the foregoing was filed through the Court's

electronic filing system.  Notice of this filing will be sent by email to all parties by operation of

the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


KASOWITZ BENSON TORRES LLP

By: /s/ Christine A. Montenegro
Christine A. Montenegro (ct30008)
Lea Dartevelle Erhel (pro hac vice pending)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
E-mail: cmontenegro@kasowitz.com
        ldartevelle@kasowitz.com