## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

CHET MICHAEL WILSON, individually and
on behalf of all others similarly situated,

       *Plaintiff*,

*v.*

EASY SPIRIT, LLC

       *Defendant.*

Case No. 25-cv-00112

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO THE DEFENDANT'S MOTION TO DISMISS OR STAY

Chet Michael Wilson uses a cellphone like nearly every American. Ubiquitous in society, cellphones have largely replaced landlines as the "residential" phones people use to communicate, whether by calling or texting. And the Telephone Consumer Protection Act protects those cell users from unwanted solicitations—just as it protects all landline users—including cellular telephone numbers listed on the National Do-Not-Call list. Were it otherwise, the TCPA would be rendered a relic like the landline itself, invoked only when a telemarketer happened to call a landline. Congress never intended that result, nor does the TCPA's text support it.

Although first enacted in 1991, the TCPA has accounted for evolving technologies like cellphones and text messaging. To that end, its provisions protect "residential telephone *subscribers*" no matter the device they use to call and text. So, when Mr. Wilson listed his cell number on the National Do Not Call Registry, that designation protected *him*, not his cellphone, as a subscriber using a "residential" line. And his designation had teeth. It warned telemarketers like Easy Spirit not to call or send him texts, less they risk liability under the TCPA.

1

But Easy Spirit sees it differently. In its view, the TCPA protects only those relics from the past—landlines—from receiving unwanted phone calls, contending that Congress never intended to protect consumers using cellphones. But if that were so, Easy Spirit could call or text any cellphone subscriber it wanted even if the subscriber appeared on the Do Not Call list, exposing all cellphone users to the automated onslaught that computerized solicitations can unleash. Nobody but a telemarketer would want that result.

Even so, Easy Spirit seeks to breathe new life into a dead argument, contending the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* upends everything. 603 U.S. 369, 144 S. Ct. 2244 (2024). In *Loper*, the Supreme Court did away with *Chevron* analysis, but it did not invalidate every *Chevron*-related case. *Id*. at 2273. It held only that courts must "independently" evaluate a statute's text without *deferring* to an agency's interpretation. *Id*. at 2268. This does not suggest agency interpretations lack weight. Quite the opposite, the Court clarified that "although an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise." *Id*. at 2267. That would include both the FCC's 2003 TCPA Report and Order creating the presumption that cellphone lines are "residential lines" and protected under the TCPA, and the FCC's 2023 TCPA Report and Order codifying the existing presumption that the DNC Registry's protections encompass text messages. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14039 (July 3, 2003); *In re Targeting and Eliminating Unlawful Text Messages, Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 38 FCC Rcd. 12247, 12256 (Dec. 18, 2023). Yet in Easy Spirit's view, without *deference* to these reports and orders, the Court could never reach the same conclusion. And that is the argument's fatal flaw.

## BACKGROUND

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). Private suits can seek either monetary or injunctive relief. *Id.* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who,

despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

Plaintiff is, and has been for at least five years, the subscriber to and customary user of his cellular telephone number—(541) XXX-9999. *See* First Amended Complaint, ECF No. 24 at ¶ 9. Plaintiff had registered his number on the National Do Not Call Registry for at least 30 days prior to receiving the calls at issue. *Id.* at ¶ 16. Defendant placed calls to telephone number (541) XXX-9999 intending to reach someone other than Plaintiff. *Id.* at ¶ 17. Defendant delivered, or caused to be delivered, text messages to telephone number (541) XXX-9999 in 2024 and 2025, including on December 19, 22, 24, 26, 29, 31 and January 1, 4, 6, 7, 2025. *Id.* at ¶ 18. Some of the text entries are below:



Due to the *en masse* nature of the text messages sent, the Plaintiff is pursuing claims against the following putative class:

> **National DNC Class:** All persons throughout the United States (1) who did not provide their telephone number to Easy Spirit, LLC, (2) to whom Easy Spirit, LLC delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Easy Spirit, LLC goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Easy Spirit, LLC delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

*Id.* at ¶ 27.

To be clear, Easy Spirit has presented no evidence that Mr. Wilson himself requested information from Easy Spirit and, in fact, he explicitly pleads otherwise in his complaint. However, Mr. Wilson has a unique cellular telephone number, (541) 999-XXXX. As a result, he is regularly inundated with unwanted telemarketing calls. As Mr. Wilson explained in a recently filed affidavit in this matter: he has had the number (541) 999-XXXX for more than 5 years. *See* Affidavit of Chet Michael Wilson, ECF No. 26. Mr. Wilson further explains that he "did not learn about the TCPA's protections until last year. Since then, I have filed numerous lawsuits against telemarketers that have called my number with unwanted pre-recorded messages and to my personal number that is on the National Do Not Call Registry." *Id.* at ¶ 10. Mr. Wilson further explains his basis for bringing such claims and explains that the assertion that he acquired a number to lay in wait to bring TCPA claims years later is flat wrong:

> I do not use multiple telephone numbers to manufacture TCPA cases. Indeed, I do not manufacture TCPA cases, period having acquired my telephone number well before I learned of the TCPA.
>
> I have never proactively created or found TCPA claims nor entrapped businesses. I do not welcome nor invite these illegal calls and have taken measures for them to stop, including by placing my number on the Do-Not-Call Registry and holding those who call me accountable for their actions.

I was harmed by the Defendant's calls and text messages. Illegal calls are frustrating, obnoxious, and annoying. They are a nuisance and disturbed my solitude.

I do not and have never welcomed nor wanted illegal calls and do nothing to receive or deserve them. My injury was done completely at the hands of Defendant, who took it upon itself to call me in violation of the TCPA.

I brought this case as a class action because I know that there are likely thousands more people in a similar situation such as myself, having received calls from Defendant without their consent.

*Id.* at ¶ 11-15. Easy Spirit continues to highlight the volume of cases Mr. Wilson has filed, but his unique number has caused countless more companies to contact him illegally. Mr. Wilson exercising his rights does not make him lose his right to file lawsuits, it makes him a strong class representative. Indeed, "nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

Merely because Mr. Wilson is able to identify those who placed calls to him illegally does not deprive him of harm or standing any more "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp.

3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs who prove their cases to end up worse off than before the defendant injured them. Thus, courts reject such irrelevant and dangerous attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop robocalls:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as *Stoops* endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

## ARGUMENT

### I.    Plaintiff has sufficiently alleged that his telephone is a residential telephone.

The Plaintiff's allegations on this point are straightforward. Mr. Wilson has alleged that the telephone number is his residential number. *Id.* at ¶ 10. The Plaintiff uses that number for personal and household purposes. *Id.* at ¶ 11. Mr. Wilson does not have a landline telephone

number in his home. *Id.* at ¶ 12. Mr. Wilson uses his cellular phone number for personal use only as one would use a landline telephone number in a home. *Id.* at ¶ 13. Mr. Wilson uses his cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes. *Id.* at ¶ 14. Mr. Wilson is not reimbursed by a business for his cell phone plan. *Id.* at ¶ 15.

So without more, Plaintiff sufficiently alleges that his telephone is a residential telephone. And since the Court must view the complaint in the light most favorable to the plaintiff and accepting all well-pleaded facts as true[1], Defendant's contention that Plaintiff cannot bring suit under 47 U.S.C. § 227(c) because the alleged calls were made to a cellular telephone, fails as it is contradicted by express allegations in Plaintiff's class action complaint. *See, e.g., Koeller v. Seemplicity Sec. Inc.*, No. 4:24-cv-00528-SRC, 2024 U.S. Dist. LEXIS 205164, *8 (E.D. Mo. Nov. 12, 2024) ("[plaintiff] alleges that he uses his cell phone for 'personal residential purposes…[this] allegation is a factual one and in no way conclusory"); *Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019) ("[the plaintiff] alleges that '[h]is cellular phone number is not currently associated with a business and is for personal use." . . . [and that he] "registered his cellular phone number on the [do-not-call list]'. The Court thus finds no categorical bar to Plaintiff alleging a violation of 47 U.S.C. § 227(c)(5) through conduct violating 47 C.F.R. § 64.1200(c)(2) and (d), as applied to solicitations to his wireless telephone number under 47 C.F.R. § 64.1200(e)").[2]

---

[1] *See Lynch v. City of New York*, 952 F.3d 67 (2nd Cir. 2020).

[2]       *See also Escano v. RCI LLC*, No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *16 (D.N.M. Nov. 28, 2022) ("the Complaint alleges facts that plausibly suggest Plaintiff's cell phone qualifies as 'residential' under the applicable statutes"), *report and recommendation adopted*, No. 222CV00360DHUGJF, 2023 WL 34525 (D.N.M. Jan. 4, 2023); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to

## II. The National Do Not Call Registry Applies to all Consumer Telecommunications Services based on the Plain Language of the Statute.

Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). That analysis shows that residential cell phones are plainly eligible for inclusion in the National Do Not Call Registry, as Defendant

---

residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."), *adhered to on denial of reconsideration*, 541 F. Supp. 3d 138 (D. Mass. 2021); *Fischman v. Mediastratix, LLC,* No. 2:20-CV-83-D, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021) ([The plaintiff] has alleged a concrete injury. In 2004, [he] registered his cell phone number with the Do-Not-Call registry. . . . Since 2018, [he] has received over 25 unsolicited telemarketing calls[.]"); *Valdes v. Century 21 Real Est., LLC*, No. CV 2:19-05411, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) ("The Court finds that in light of the FCC guidance stating that it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections, it is sufficient under Rule 12(b)(6) that Valdes has alleged that his cellular telephone number was not used for a business purpose."); *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405, at *4 (D.N.J. Nov. 20, 2018) ("Here, at this juncture of the litigation, Plaintiff has sufficiently pled that his cellular phone is used for residential purposes."); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *6 (D. Md. Sept. 2, 2016) (noting "the FCC applied the prohibition in § 64.1200(c) to wireless telephone numbers," and explaining the plaintiff's allegations "his cellular telephone number has been listed on the DNC registry since 2006" and "the calls were made for telemarketing purposes . . . . are sufficient to establish . . . entitlement to statutory damages under the TCPA), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *4 (W.D. Tex. Dec. 15, 2022) ("[the plaintiff] alleges her cellphone number was on the national Do-Not-Call list; she asked telemarketers . . . multiple times to stop calling her cellphone and to place her on its internal Do-Not-Call list, and; the Defendants continued to call her cellphone. . . . [the plaintiff] plead sufficient facts to state a plausible claim for relief under the TCPA").

concedes the consensus of authority in the Third Circuit has concluded. As such, the Plaintiff need not, and does not, rely on the FCC's interpretation of an unambiguous statutory provision.

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes, just as Plaintiff has pled and Court ruled here, is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012).

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003, when Congress passed the Do-Not-Call Implementation Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to (1936)/restricted to (2003) . . . residences; of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936) (emphasis added) (cleaned up).

Especially in Webster's 2003 sense of "residential" meaning "restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential," which is "not used as" or "not restricted to" residences or by residents. Webster's New Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, Congress realized that, in the future, traditional

residential forms of telecommunication like copper landlines may come to be supplanted by other technologies, like T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change. That interpretation is consistent with the language of the Telecommunications Act, which applies to all forms of communication, including using technologies yet to be developed. 47 U.S.C § 153(53) (defining a telecommunications service "regardless of the facilities used").  Any other reading arbitrarily limits the scope of the term "residential" to read "copper landline." No part of the statute contains a suggestion that the general term "residential" should be given such a limited, narrow meaning. Instead, the statute suggests, that there is a distinction between "residential" and "nonresidential," i.e. commercial, *uses* and *purposes*, regardless of the *technologies* used.

Importantly, at the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[3] A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). Accordingly, "consumers" who subscribe to "telephone exchange services" are protected by the DNC Registry. "Businesses" who subscribe to "telephone exchange services" for businesses are not. And a "telephone

---

[3] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 F.C.C. Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶¶ 22, 42 (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

exchange service" clearly implicates cell phones, in that cell phone service is provided, "through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service." 47 C.F.R. § 64.2305(g)(1)(B). And a "telecommunications service" means " the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, *regardless of the facilities used*." 47 U.S.C § 153(53) (emphasis added). And "telecommunications" means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C § 153(50). That is to say, say, a "telephone exchange service" for consumers allows a residential subscriber to place and receive information, such as telephone calls, regardless of the facilities used.

As such, "according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes…*i.e*., for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (citing *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 206 (S.D.N.Y 2024)). In other words, the analysis turns on *how* the subscriber uses the line, not what *device or technology* they use it on. Indeed, as the Middle District of Pennsylvania held last year:

> The best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" both modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

The TCPA itself distinguishes between "business subscriber" and "residential subscriber" in 47 U.S.C. § 227(a)(2)(A): "The term "established business relationship" … "shall include a relationship between a person or entity and a *business subscriber* subject to the same terms applicable under such section to a relationship between a person or entity and a *residential subscriber*." (emphasis added). This shows "Congress used the term 'residential' in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber." *Cacho*, 739 F. Supp. 3d at 206. This distinction "would make little sense if the term 'residential subscriber' referred to users with landlines physically located in their residences, rather than users who use their phones for residential purposes, because many individuals operate home-based businesses." *Id.* at 207.

As such, this Court need not even consider whether the FCC's interpretation that residential cell phones are eligible for registration on the National Do Not Call Registry has binding effect because the court can so hold so using the plain tools of statutory construction without regard to the FCC's interpretation. This Court's interpretation will be driven by traditional tools of statutory construction, which dictate the correct result, that residential cell phones can be registered on the DNC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374, 14 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.").

The cases relied upon by Easy Spirit are outliers or have since been disagreed with by other courts. For example, in *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the plaintiff received multiple telemarketing calls to his cellular telephone from the

defendant in alleged violation of the TCPA and filed suit. The court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions. The court nevertheless awarded the plaintiff $33,000 in statutory damages. Indeed, subsequent decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones. *See Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) ("we find that plaintiff's allegations pertaining to his cell phone—namely, that he used the cell phone for personal purposes, including booking vacations—are sufficient" to establish plaintiff was a "residential subscriber"); *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) (holding the same Plaintiff had stated a claim for calls to his residential cell phone on the Do Not Call Registry). The remaining *Cunningham* cases involved a *pro se* plaintiff, who either failed to address defendant's arguments or failed to plead he used his cellphone for residential purposes.

Indeed, the overwhelming majority of courts to consider the issue at bar have held that DNC Registry's protections apply to cell phones. "[T]he majority of courts throughout the country . . . have held that cell phones . . . are entitled to the TCPA's protection as residential telephones." *Tessu v. AdaptHealth, LL*C, No. SAG-23-0364, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023). This is consistent with the plain, textualist reading of the TCPA articulated above.[4]

---

[4]    *See also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("As Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact sufficient to satisfy Article III."); *Barton v. JMS Assoc. Mktg., LLC*, No. 21-35836, 2023 WL 2009925, at *1-2 (9th Cir. Feb. 15, 2023) (explaining the "district court . . . erred in declining to award damages" under 47 C.F.R. § 64.1200(c)(2) for calls to the plaintiff's "cell phone"); *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) ("To be sure, cell phones *can* be 'residential' under the TCPA."); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023) ("The consensus in [the Third] Circuit is that Do Not Call claims may apply to cell phones."); *Noviello v. Holloway*

### III.    The TCPA prohibits "telephone solicitations" to "residential telephone subscribers," including text solicitations.

Starting with the TCPA's text under § 227(a), a "telephone solicitation" is "the initiation of a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C.

---

*Funding Grp.*, No. 3:22-CV-52-BN, 2023 WL 128395, at *5 (N.D. Tex. Jan. 9, 2023) ("[C]ourts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes."); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *3 (E.D. Wis. May 16, 2022) ("The TCPA and its enabling regulations also apply to wireless telephone numbers such as Plaintiff's, which were personal use, not associated with any business, and registered on the National Do Not Call Registry."); *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *3 (S.D. Cal. May 12, 2022) (rejecting the defendant's position that the plaintiff's cellular telephone "was not a residential telephone subscriber covered by the TCPA"); *Rose v. New TSI Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (rejecting the defendant's argument that the plaintiff "has no private right of action under the TCPA because he alleges only that he received prerecorded messages on his cellphone, thus failing to establish that he is a residential telephone subscriber"); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022) ("courts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes"); *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2022 WL 325722, at *3 (D. Mass. Feb. 3, 2022) (agreeing that the "TCPA's DNC protections apply to cellular phone numbers"); *Dudley v. Vision Solar, LLC*, No. CV 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) ("The consensus in this Circuit is that Do Not Call claims may apply to cell phones."); *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021) ("[I]t is unlawful to 'initiate any telephone solicitation to' a 'residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.' 47 C.F.R. § 64.1200(c)(2). That includes cell-phone owners."); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d)."); *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020) ("[o]ther courts that have considered the application of § 64.1200(e) have concluded that a cell phone user can qualify as a residential telephone subscriber under § 64.1200(c) and (d)"); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (rejecting the defendant's contention "that cell phones, as a matter of law, cannot be residential subscribers," based on "common sense and the greater weight of authorities"); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022).

§ 227(a)(4) (emphasis added). Without a controlling statutory definition, the term "message" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "Message" means "a communication in writing, in speech, or by signals."[5] Within that context, and in view of the ordinary meaning of "message," Easy Spirit's argument falls flat. The DNC Registry—and its private right of action—is afforded to "residential telephone subscribers" who receive unwanted "telephone solicitations," which include "messages," *i.e.,* "communications in writing." 47 U.S.C. § 227(c)(1).

Still, Easy Spirit says the TCPA's private right of action applies only to consumers who receive unsolicited "telephone calls" and fixates on that term alone while ignoring all others. That defies the text. Subsection 227(c)(5) grants a private right of action to a "person who has received more than one telephone call within any 12-month period." The 2003 Order discusses 'voice calls,' 'text calls,' and 'short message service (SMS) calls,' indicating that they are all types of calls and, therefore, telephone calls within the meaning of Section 227(c)(5). As one court noted, "[t]he statute does not specify that it must be a voice call or a live telephone solicitation or a live telemarketing call: it simply applies to telephone calls broadly. Because the FCC recognizes text calls as a type of call, a text message would presumably be a form of a telephone call under § 227(c)(5)." *Hudson v. Palm Beach Tan, Inc.,* No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *20-*21 (M.D.N.C. Aug. 12, 2024). Additionally, Courts have routinely found that the phrase "call" in § 227(b) of the statute includes text messages. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2, 141 S. Ct. 1163 (2021) (assuming the TCPA's prohibitions extent to text messages); *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156, 136 S. Ct. 663 (2016) ("A text

---

[5]  "Message." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ message (last visited March 20, 2025).

message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (§ 227(b) "applies to text message calls as well as voice calls"); *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 785 (N.D. Ill. 2016), aff'd on other grounds, 855 F.3d 793 (7th Cir. 2017); *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 642 (N.D. Ill. 2019); *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000 (N.D. Ill. 2014).

Accordingly, the court in *Hudson* reasoned "[i]f a text message is a 'call' under the statutory language in subsection (b)(1)(A)—which places restrictions on making 'any call' using an automatic telephone dialing system to certain lines, without separately specifying that it includes text messages—then there is no reason to assume that a text message could not be a call under subsection (c) (5)." *Hudson,* 2024 U.S. Dist. LEXIS 165676, at *17 fn. 6.

The Seventh Circuit recently held, post-*Loper,* "[w]e therefore conclude that 'telephone solicitation' [in the context of Section 227(c)] means the initiation of a call or message for the purpose of persuading or urging someone to pay for a service." *Hulce,* 2025 U.S. App. LEXIS 6196, at *10. In *Hulce,* plaintiff alleged defendant violated 47 U.S.C. § 227(c) and its implementing regulations by initiating prohibited 'telephone solicitations,' including unsolicited calls and text messages, although his number was listed on the DNC Registry. *Id.* at *1, 3. The Seventh Circuit ultimately held that the calls and messages did not fall within the definition of 'telephone solicitation' in 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15) because defendant did not initiate them "for the purpose of encouraging" anyone to pay for its services, but the Seventh Circuit did not question that text messages could fall within the ambit of "telephone solicitations." *Id.* at *10-11. That consists with the Ninth Circuit's reasoning, as it also recognized

17

that unsolicited text messages are prohibited by the TCPA. *See Hall v. Smosh Dot Com, Inc.,* 72 F.4th 983, 986 (9th Cir. 2023) (plaintiff who "alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA" has standing to pursue claim under section 227(c) of the TCPA); *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (same). Indeed, the Second Circuit in *Soliman v. Subway Franchisee Adver. Fund Trust, Ltd.,* 101 F.4th 176 (2024) acknowledged that text messages could form the basis for a TCPA claim, just not under the subsection of the TCPA that claimed that a text message was a "pre-recorded voice".

Additionally, courts all over the country have found text messages can establish the basis for a claim under Section 227(c). For instance, in *Reimer v. Kohl's, Inc.*, the Eastern District of Wisconsin denied defendant's motion to dismiss, holding plaintiff can bring claim under 47 U.S.C. § 227(c) arising out of defendant's text messages in alleged violation of 47 C.F.R. § 64.1200(c)(2). *Reimer*, 2023 U.S. Dist. LEXIS 168078, at *13. Rejecting the near-identical argument that TCPA does not apply to text messages, the court explained that "[b]y exempting text messages in certain areas of § 64.1200 [not at issue in this case], the FCC has implicitly stated that text messages are already included" and that "§ 64.1200 has been updated each year since 2018, and sometimes multiple times a year, with text messages exempted from areas other than the ATDS provisions [not at issue in this case], reinforcing their implicit inclusion in the reach of the DNC Provision [which is at issue in this case]." *Id.* at *11. *See also Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. June 9, 2023) ("GVG Capital also argues that text messages are not actionable under the TCPA provisions at issue...This argument fails in the face of the statutory text, which

refers to 'telephone call[s] or message[s],' 47 U.S.C. § 227(c), the applicable regulations, and the decisions of the various courts to consider the issue.") [6]

While numerous courts have held unsolicited text messages violate Section 227(c) and the DNC Registry regulations post-*Loper,* at least two courts have specifically acknowledged *Loper* in concluding the same: (1) *Hudson,* 2024 U.S. Dist. LEXIS 165676, *supra,* and (2) *Dawson v. Porch.com,* No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363 (W.D. Wash. Nov. 13, 2024).

In *Dawson,* the court held "the FCC's interpretation is reasonable and consistent with the dictionary's definition of 'call,' how text messages are sent and used, and the purposes of the TCPA," and agreed with this analysis "regardless whether deference to the agency's interpretation is appropriate or not." 2024 U.S. Dist. LEXIS 206363, at *10, fn. 4 (citing *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 144 S. Ct. 2244 (2024)).

Likewise, in *Hudson,* the court denied defendant's motion to dismiss, holding,

---

[6] Countless other courts concur that the DNC Registry's protections apply to text messages, a sampling of which includes *Mantha v. Quotewizard.Com,* LLC, 347 F.R.D. 376, 387 (D. Mass. 2024) ("the texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto Protect, LLC,* No. 2:24-cv-1282, 2024 U.S. Dist. LEXIS 202146, at *7, 12 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 U.S. Dist. LEXIS 13605, at *12, 17 (D. Ariz. Jan. 27, 2025) (same); *Bradshaw v. CHW Grp., Inc.,* No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649 (D.N.J. Jan. 24, 2025) (same); *Hughes v. Circle K Stores, Inc.,* 740 F. Supp. 3d 721, 728 (C.D. Ill. 2024) (same); *Eagle v. GVG Capital, LLC,* No. 22-cv-00638-SRB, 2023 U.S. Dist. LEXIS 15834, at *8-9 (W.D. Mo. Jan. 31, 2023) (same); *Pariseau v. Built USA, LLC,* 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) (same); *Sagar v. Kelly Auto. Grp.*, No. 21-cv-10540-PBS, 2021 U.S. Dist. LEXIS 227781, at *13 (D. Mass. Nov. 29, 2021) (same); *Fralish v. Deliver Tech., LLC,* No. 3:20-CV-00353-DRL-MGG, 2021 U.S. Dist. LEXIS 143822, *19 (N.D. Ind. Aug. 2, 2021) (same); *Gulden v. Liberty Home Guard LLC*, No. CV-20-02465-PHX-JZB, 2021 U.S. Dist. LEXIS 33833, at *11 (D. Ariz. Feb. 23, 2021) (same); and *Williams v. Myler Disability, LLC,* No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at *15 (W.D.N.C. Nov. 12, 2020) (same).

> [T]ext messages can establish the basis for a claim under § 227(c)(5)…By its terms, § 227(c) protects residential telephone users' privacy rights 'to avoid receiving telephone solicitations to which they object.' 47 U.S.C. 227(c)(1). A 'telephone solicitation' is defined as 'the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.' 47 U.S.C. 227 (a)(4). Thus, 'messages' are included in the relevant statutory provisions.

*Hudson*, 2024 U.S. Dist. LEXIS 165676, at *17. The Court noted that after the briefing was completed the Supreme Court issued its decision in *Loper*. *Id.* at *12, fn. 4. Still, it stated it was "not clear that the decision in *Loper* would affect any of the analysis" in its motion to dismiss ruling, but agreed to "further consider any such issues after an opportunity for the Parties to address and fully brief them." To date, the court's order on defendant's motion to dismiss still stands. *Id.*

The Court should follow the above well-reasoned decisions and hold that Mr. Wilson has a private cause of action under 47 U.S.C. § 227(c)(5) based on Easy Spirit's violative text messages.

**IV.    Under the Hobbs Act the Court lacks jurisdiction to set aside the FCC's 2003 Order and the FCC's 2023 Order.**

This case has a wrinkle that *Loper* did not, as the Hobbs Act "gives the federal courts of appeals exclusive jurisdiction to enjoin, set aside, suspend or to determine the validity of certain FCC orders". *Gorss Motels, Inc. v. FCC*, 20 F.4th 87, 91 (2nd Cir. 2021). So too, it follows that the court must consider the Hobbs Act's jurisdictional bar before determining whether the FCC's rules and regulations at issue were enacted within the boundaries of the FCC's "delegated authority" under *Loper. Loper,* 603 U.S. at 404.

Under the Hobbs Act, appellate courts have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain "final orders of the Federal Communication Commission." 28 U.S.C. § 2342(1); *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*., 588 U.S. 1, 6-8 (2019) (same). "Under the Hobbs Act…in the absence of a

challenge to the 2003 FCC ruling in the appropriate federal court of appeals, the FCC's rulings interpreting the TCPA have 'the force of law,' so this court must follow them." *Abdallah v. FedEx Corp. Servs.,* No. 16cv-3967, 2019 U.S. Dist. LEXIS 158830, at *16 (N.D. Ill. Sep. 18, 2019) (collecting cases). Therefore, absent a direct appeal to review the FCC's 2003 Order and the FCC's 2023 Order, this Court is bound to follow the FCC's legal interpretation of the TCPA. Easy Spirit cannot sidestep the Hobbs Act.

### V.    This Court should not stay this matter.

The parties have briefed the Defendant's prior motion to stay these proceedings. *See* ECF No. 23 and 26. As such, the Plaintiff will not repeat his argument in this brief, but continues to oppose a stay. As previously explained, no stay is needed because no reliance on the FCC Order is required for this Court to come to the eminently reasonable conclusion that the TCPA protects residential cellular telephones (as opposed to just copper landlines), like Mr. Wilson's. As one Court put it, addressing a similar motion to stay: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025).

### <u>CONCLUSION</u>

At bottom, Plaintiff sufficiently alleges that his telephone is a residential telephone, and as such, the motion to dismiss should be denied.

Furthermore, the Defendant's novel argument that the TCPA does not apply to text messages should also be rejected.

DATED this 29th day of April, 2025.

By: */s/ Anthony I. Paronich*
    Anthony I. Paronich
    anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
    Telephone: (617) 738-7080
    Facsimile: (617) 830-0327

    *Attorney for Plaintiff and the putative Class*