IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>EASY SPIRIT, LLC<br><br>*Defendant.* | Case No. 25-cv-00112 |

**PLAINTIFF'S SUR-REPLY TO SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER OPPOSITION OF THE DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Introduction**

Defendant's reply attempts to re-cast controlling law and the record, but in doing so confirms why dismissal is improper. Its lead argument—that *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), forecloses any reliance on the Administrative Procedure Act's "arbitrary and capricious" standard—misstates both *McLaughlin* and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Those cases direct courts to interpret statutes independently while giving appropriate respect to the considered judgments of agencies, not to strip away the FCC's rulemaking authority or to insulate Defendants from the TCPA's text and purpose. Even apart from deference, Defendant's arguments continue to ignore the statutory language, structure, and history of § 227(c), which confirms that Congress meant to protect all residential subscribers—including cell phone users—through the National Do-Not-Call Registry, as every Court following *McLaughlin* has held. With respect to text messages, Defendant's reliance on post-2018 amendments fares no better: nothing in those changes retracts the Registry's coverage of text messages or excludes wireless residential use.

**I.    The APA's "Arbitrary and Capricious" Standard Remains Relevant Under *McLaughlin* and *Loper Bright***

Defendant asserts that *McLaughlin* forecloses any application of the APA's arbitrary-and-capricious standard to the FCC's TCPA regulations. That misreads the case as nowhere did the Court hold that FCC regulations duly promulgated under delegated authority lose their binding effect. To the contrary, FCC rules under § 227(c) are "legislative rules" with the "force and effect of law." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 7 (2019). Those rules explicitly bar initiating any solicitation to a "residential telephone subscriber" on the Registry, and define "telephone solicitation" to include "a telephone call or message." 47 C.F.R. § 64.1200(f)(15).

1

Such rules are not advisory guidance but binding law, reviewable under the APA's arbitrary-and-capricious standard if challenged directly in a Hobbs Act proceeding, as the Eighth Circuit recently held in a similar context. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("We consider a challenge to the agency's decision making under the APA's arbitrary-and-capricious standard next. But because Congress granted the FCC discretion to interpret Section 202(h) within the public interest, we decline to grant the petition on the basis that the FCC's definition of 'competition' is inconsistent with Section 202(h).").

Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E). Because the FCC exercised its discretion granted by the statute, the Administrative Procedure Act's deferential arbitrary-and-capricious standard. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) (quoting *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025). Accordingly, "the Commission has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

Defendant's position also conflicts with *Loper Bright*. Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may even apply "deferential review

upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. The agency did so, and courts across the country have recognized that cell phones fall within "residential subscriber" protections and that text messages are calls under the TCPA.

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. The FCC's decisionmaking here was, at the very least, "reasonable and reasonably explained." *Seven County Infrastructure Coal. v. Eagle Cnty.*, 145 S.Ct. 1497, 1511 (2025). Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Ferrell v. Colourpop Cosmetics, LLC*, No. 2:25-cv-01324-SPG-AJR, 2025 U.S. Dist. LEXIS 140893, at *17–20 (C.D. Cal. July 22, 2025). This Court should do the same.

  **II.**  **Congress Did Not Exclude Text Messages From § 227(c)**

Defendant next argues that Congress in 2018 "expressly excluded text messages" from § 227(c) while referencing them elsewhere. That is incorrect. Section 227(c)(5) grants a cause of action to any "person who has received more than one telephone call within any 12-month period" in violation of the Registry. The Defendant's interpretation invokes the canon that when "Congress includes particular language in one section of a statute but omits it in another section," the omission is presumptively intentional. *Russello v. United States*, 464 U.S. 16, 23 (1983)).

3

That canon, however, comes with a big caveat: "The force of any negative implication … depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). Defendant's proposed inference invokes a different part of the TCPA, its restrictions on autodialer and robocall technology in § 227(b), where the terms "cellular telephone service" and "residential telephone line" are used in separate subsections. But context undercuts the inference Defendant's seeks to draw, because § 227(b) and § 227(c) have "markedly different scope and structure." See *Wilson v. Skopos Fin., LLC,* No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *4 (D. Or. July 21, 2025). Section 227(b) identifies intrusive telemarketing practices based on the *technologies* involved, while § 227(c) focuses on protecting identified *people*—"residential subscribers"—from unwanted telephone solicitations. *See Wilson*, 2025 WL 1784815, at *4. That difference in structure and focus provides most natural explanation for why "cellular telephones" would be expressly mentioned in § 227(b), but not § 227(c).

Courts, the FCC, and the Supreme Court have all long recognized that a text is a "call" under the TCPA and post-2018 FCC rulings confirmed this same understanding, stating unequivocally that "[t]his prohibition includes both voice calls and text messages" to numbers on the Registry. *In re Emanuel "Manny" Hernandez; Click Cash Mktg., LLC; & Rock Solid Traffic*, 33 F.C.C.R. 12382, 2018 WL 6830220, at *1 (F.C.C. Dec. 21, 2018)

### III. The Private Right of Action Under § 227(c)(5) Extends to Text Messages to Residential Cell Phones

Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated. Section 227(c)(5) grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision

4

designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

Defendant doesn't dispute that text messages can be sent "in violation of the regulations." 47 U.S.C. § 227(c)(5). The FCC's regulations explicitly say so. *See* 47 C.F.R. § 64.1200(e). Defendant nevertheless contends that Congress's use of the word "call" in § 227(c)(5) limits private judicial remedies exclusively to *voice* calls that violate the regulations. That's incorrect. That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4). Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call. So those uses of the word "call" must have encompassed both voice and text transmissions, too.

The Defendant's motion should fail.

5

|  |  |
|---|---|
| Dated: September 5, 2025 | Respectfully Submitted,<br><br>*/s/ Anthony I. Paronich*<br>Anthony I. Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>(508) 221-1510<br>anthony@paronichlaw.com<br><br>*Attorneys for Plaintiff and the putative Class* |