# EXHIBIT 1

# Wilson v. Easy Spirit, LLC

**Demonstrative**

December 4, 2025



© 2025 KASOWITZ LLP | WWW.KASOWITZ.COM



# 47 U.S.C. § 227(c)(5) – Private Right of Action

**(5) Private right of action**

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.



# 47 U.S.C. § 227(c)(1)

## (c) Protection of subscriber privacy rights

### (1) Rulemaking proceeding required

Within 120 days after December 20, 1991, the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. The proceeding shall—

(A) compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages;

(B) evaluate the categories of public and private entities that would have the capacity to establish and administer such methods and procedures;

(C) consider whether different methods and procedures may apply for local telephone solicitations, such as local telephone solicitations of small businesses or holders of second class mail permits;

(D) consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, propose specific restrictions to the Congress; and

(E) develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section.



# 47 U.S.C. § 227(c) - Generally

**(c) Protection of subscriber privacy rights**

**(1) Rulemaking proceeding required**

Within 120 days after December 20, 1991, the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. The proceeding shall—

(A) compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages;

(B) evaluate the categories of public and private entities that would have the capacity to establish and administer such methods and procedures;

(C) consider whether different methods and procedures may apply for local telephone solicitations, such as local telephone solicitations of small businesses or holders of second class mail permits;

(D) consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, propose specific restrictions to the Congress; and

(E) develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section.

**(2) Regulations**

Not later than 9 months after December 20, 1991, the Commission shall conclude the rulemaking proceeding initiated under paragraph (1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers.

**(3) Use of database permitted**

The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase. If the Commission determines to require such a database, such regulations shall—

(A) specify a method by which the Commission will select an entity to administer such database;

(B) require each common carrier providing telephone exchange service, in accordance with regulations prescribed by the Commission, to inform subscribers for telephone exchange service of the opportunity to provide notification, in accordance with regulations established under this paragraph, that such subscriber objects to receiving telephone solicitations;

(C) specify the methods by which each telephone subscriber shall be informed, by the common carrier that provides local exchange service to that subscriber, of (i) the subscriber's right to give or revoke a notification of an objection under subparagraph (A), and (ii) the methods by which such right may be exercised by the subscriber;

(D) specify the methods by which such objections shall be collected and added to the database;

**(4) Considerations required for use of database method**

If the Commission determines to require the database mechanism described in paragraph (3), the Commission shall—

(A) in developing procedures for gaining access to the database, consider the different needs of telemarketers conducting business on a national, regional, State, or local level;

(B) develop a fee schedule or price structure for recouping the cost of such database that recognizes such differences and—

(i) reflect the relative costs of providing a national, regional, State, or local list of phone numbers of subscribers who object to receiving telephone solicitations;

(ii) reflect the relative costs of providing such lists on paper or electronic media; and

(iii) not place an unreasonable financial burden on small businesses; and

(C) consider (i) whether the needs of telemarketers operating on a local basis could be met through special markings of area white pages directories, and (ii) if such directories are needed as an adjunct to database lists prepared by area code and local exchange prefix.

**(5) Private right of action**

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

**(6) Relation to subsection (b)**

The provisions of this subsection shall not be construed to permit a communication prohibited by subsection (b) of this section.

# *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025)



> "The District Court is not bound by the FCC's interpretation of the TCPA. The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."

*McLaughlin,* 606 U.S. at 168.

**5**



# 47 U.S.C. § 227(c)(5) – Private Right of Action

**(5) Private right of action**

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

    (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

    (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

    (C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

# 2018 Congressional Amendments to TCPA – 227(e) (1) & (2)



(e)Prohibition on provision of | **misleading or** |inaccurate caller identification information

### (1)In general

It shall be unlawful for any person within the United States, | **or any person outside the United States if the recipient is within the United States,** |in connection with any ~~telecommunications~~ | **voice** | service or ~~IP-enabled voice~~ | **text messaging** | service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).

### (2)Protection for blocking caller identification information

Nothing in this subsection may be construed to prevent or restrict any person from blocking the capability of any caller identification service to transmit caller identification information.

# 2018 Congressional Amendments to TCPA – 227(e)(8)



**(8)Definitions**

For purposes of this subsection:

**(A)Caller identification information**

The term "caller identification information" means information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a ~~telecommunications~~ | voice | service or ~~IP-enabled voice~~ | a text message sent using a text messaging | service.

**(B)Caller identification service**

The term "caller identification service" means any service or device designed to provide the user of the service or device with the telephone number of, or other information regarding the origination of, a call made using a ~~telecommunications~~ | voice | service or ~~IP-enabled voice~~ | a text message sent using a text messaging | service. Such term includes automatic number identification services.

**(C)**~~IP-enabled voice service~~ | Text message |

8

# 2018 Congressional Amendments to TCPA – 227(e)(8)



(C)~~IP enabled voice service~~ | Text message |

The term "text message"--

(i) means a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service code;

(ii) includes a short message service (commonly referred to as "SMS") message and a multimedia message service (commonly referred to as "MMS") message; and

(iii) does not include--

(I) a real-time, two-way voice or video communication; or

(II) a message sent over an IP-enabled messaging service to another user of the same messaging service, except a message described in clause (ii).

(D)Text messaging service

The term "text messaging service" means a service that enables the transmission or receipt of a text message, including a service provided as part of or in connection with a voice service.

9

# 2018 Congressional Amendments to TCPA – 227(e)(8)



**(E)Voice service**

**The term "voice service"--**

~~The~~ | **(i)** | ~~term "IP-enabled voice service" has the meaning given~~ | **means any service that is interconnected with the public switched telephone network and** | that ~~term by section 9.3 of the Commission's regulations (47 C.F.R. 9.3), as those regulations may be amended~~| **furnishes voice communications to an end user using resources from the North American Numbering Plan or any successor to the North American Numbering Plan adopted** | by the Commission ~~from time~~ | **under section 251(e)(1)** | ~~to time.~~ | **of this title; and** |

**(ii) includes transmissions from a telephone facsimile machine, computer, or other device to a telephone facsimile machine.**

# *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025)



"Pursuant to *McLaughlin* and *Loper Bright*, the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages."

*Jones v. Blackstone*, 792 F. Supp. 3d at 899.

11

# *Jones v. Blackstone Med. Servs., LLC,* 792 F. Supp. 3d 894, 900 (C.D. Ill. 2025)



"The fact that 'telephone solicitation' appears in Section 227(c) and is defined earlier in Section 227(a) to mean 'the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person' does not change the plain meaning analysis."

*Jones v. Blackstone*, 792 F. Supp. 3d at 900.

12

# *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *3 (N.D. Fla. Aug. 26, 2025)



> "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'"

*Davis v. CVS Pharmacy*, 2025 WL 2491195, at *3.

**13**

# *El Sayed v. Naturopathica Holistic Health, Inc.,* 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025)



> "[T]he statutory text here is clear, and a text message is not a 'telephone call' ...
>
> [T]he fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent dis-tinction and legislated mindful of the distinction ....
>
> When Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous."

*Sayed v. Naturopathica*, 2025 WL 2997759, at *2.

**14**

# *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 187 (2d Cir. 2024)



> "The language of the TCPA itself also makes clear Congress meant 'voice' to mean something audible, not a text message.
> …
> The use of the word 'voice' in other parts of the TCPA further supports the interpretation that a text message is not an artificial voice…. This is clearly referring to a telephone call, not a text message, as one cannot hang up on a text. Accord Trim, 76 F.4th at 1162.  Accordingly, the district court did not err in holding that a text is not an 'artificial voice.'"

*Soliman v. Subway Franchisee*, 101 F.4th at 187.

15



# FCC 2003 Order

## XIV. PRIVATE RIGHT OF ACTION

### B. Discussion

206. The Commission declines to make any determination about the specific contours of the TCPA's private right of action. Congress provided consumers with a private right of action, "if otherwise permitted by the laws or rules of court of a State."[759] This language suggests that Congress contemplated that such legal action was a matter for consumers to pursue in appropriate state courts, subject to those courts' rules. The Commission believes it is for Congress, not the Commission, to either clarify or limit this right of action.

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,*
18 F.C.C. Rcd. 14014, 14039, (July 3, 2003), ¶206



# 47 C.F.R. § 64.1200 (c)

(c) No person or entity shall initiate any telephone solicitation to:

(1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location), or

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:

(i) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:

(A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;

(B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;

(C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;

(D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.



# 47 C.F.R. § 64.1200 (e)

(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."



# FCC 2003 Order

**1. Telemarketing Calls to Wireless Numbers**

165. We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.[603] Both the statute and our rules[604] prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged."[605] This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.[606] Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls.[607] Moreover, such calls can be costly and inconvenient.[608] The Commission has long recognized, and the record in this proceeding supports the same conclusion, that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[609] Wireless subscribers who purchase a large "bucket" of minutes at a fixed rate nevertheless are charged for those minutes, and for any minutes that exceed the "bucket" allowance. This "bucket" could be exceeded more quickly if consumers receive numerous unwanted telemarketing calls.[610] Moreover, as several commenters point out, telemarketers have no way to determine how consumers are charged for their wireless service.

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order,* 18 F.C.C. Rcd. 14014, 14039, (July 3, 2003).

19



# FCC 2023 Order – Notice of Rulemaking

11.     The Commission's DNC rules also protect consumers from unwanted telephone solicitations or telemarketing calls to wireless and wireline phones when the consumer has added their wireline or wireless number to the National DNC Registry.[39] DNC rules state that telemarketers, subject to certain exceptions,[40] are prohibited from initiating any telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations";[41] this rule also applies to wireless telephone numbers.[42] Yet, while the Commission included both wireless and wireline numbers in the DNC protections, it has not explicitly included text messages in the DNC rules.[43]

*Report and Order and Further Notice of Proposed Rulemaking - Targeting and Eliminating Unlawful Text Messages Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 21-402 and 02-278, ¶11 (Feb. 23, 2023).



# FCC 2023 Order

**B. National Do-Not-Call Registry**

26. We adopt our proposal to codify the National DNC[55] Registry's existing protections to text messages.[56] Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry. The Commission previously concluded that          the national database should allow for the registration of wireless telephone numbers and that such action will further the objectives of the TCPA and the Do-Not-Call Act.[57] Our action is consistent with federal court opinions[58] and will deter both illegal texts and make DNC enforcement easier.

*In re Targeting and Eliminating Unlawful Text Messages, Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls,* 38 FCC Rcd. 12247, 12256, ¶126 (Dec. 18, 2023).

# *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 391-92 (2024)



"The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to Marbury: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "*all* relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions. That omission is telling, because Section 706 does mandate that judicial review of agency policymaking and factfinding be deferential. See § 706(2)(A) (agency action to be set aside if "arbitrary, capricious, [or] an abuse of discretion"); § 706(2)(E) (agency factfinding in formal proceedings to be set aside if "unsupported by substantial evidence")."

*Loper Bright, 603 U.S. at 391–92.*

# Administrative Procedure Act – Sections 702, 703, 704, 705, 706



### § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

### § 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

### § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

# *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 391-92 (2024)



> "Agency interpretations of statutes ... are not entitled to deference" under the APA; courts must decide "whether the law means what the agency says ."

*Loper Bright, 603 U.S. at 391–92.*

24

# *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 371 (2024)



> "The APA prescribes procedures for agency action and delineates the basic contours of judicial review of such action. And it codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to Marbury: that courts decide legal questions by applying their own judgment. As relevant here, the APA specifies that courts, not agencies, will decide "all relevant questions of law" arising on review of agency action, 5 U.S.C. § 706 (emphasis added)—even those involving ambiguous laws. It prescribes no deferential standard for courts to employ in answering those legal questions, despite mandating deferential judicial review of agency policymaking and factfinding. See §§ 706(2)(A), (E). And by directing courts to "interpret constitutional and statutory provisions" without differentiating between the two, § 706, it makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are not entitled to deference."

*Loper Bright*, 603 U.S. at 371.

25

# *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 386-87 (2024)



> "Courts exercising independent judgment in determining the meaning of statutory provisions, consistent with the APA, may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes. See *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161. And when the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits.
>
> …
>
> 'Respect,' though, was just that. The views of the Executive Branch could inform the judgment of the Judiciary, but did not supersede it. Whatever respect an Executive Branch interpretation was due, a judge 'certainly would not be bound to adopt the construction given by the head of a department.' … Otherwise, judicial judgment would not be independent at all. As Justice Story put it, 'in cases where [a court's] own judgment … differ[ed] from that of other high functionaries,' the court was 'not at liberty to surrender, or to waive it.'"

*Loper Bright*, 603 U.S. at 386–87.

# *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,* 606 U.S. 146, 152 (2025)



> "The Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct. Here, therefore, the District Court should interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."

*McLaughlin*, 606 U.S. at 152.

**27**

# *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025)



> "Fundamental principles of administrative law establish the proper default rule: In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."

*McLaughlin*, 606 U.S. at 155.

> "Judicial review in enforcement proceedings of course may also include review of whether the rule or order was arbitrary and capricious under the APA or otherwise was unlawful. Because this case involves interpretation of a statute, we focus here on that scenario."

*McLaughlin*, 606 U.S. at 155, Fn 2.

# *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,* 606 U.S. 146, 161-62 (2025)



> "In an enforcement proceeding, a district court is not bound by an agency's statutory interpretation.
>
> ….
>
> In short, the Hobbs Act does not bar McLaughlin from arguing in the district court enforcement proceeding that the FCC's interpretation of the TCPA is incorrect. The Hobbs Act dictates how, when, and in what court a party can challenge a new agency order before enforcement. The Act does not purport to address, much less preclude, district court review in enforcement proceedings. So the District Court in this enforcement proceeding can decide what the statute means under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation. By doing so, the District Court will not "determine the validity" of the FCC's *Amerifactors* order and thus will not contravene the Hobbs Act."

*McLaughlin,* 606 U.S. at 161–62.

29

# 47 U.S.C. § 227(b) (1) & (3) – Private Right of Action



**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artifici or prerecorded voice—

(i) to any emergency telephone line (including any "911" line and any emergency line of ; hospital, medical physician or service office, health care facility, poison control center, or fii protection or law enforcement agency);

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B);

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through—

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or

(D) to use an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.

**(3) Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.



# 47 U.S.C. § 227(b)(3) – Private Right of Action

**(3) Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

# *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025)



"[T]he fact remains that Section 227(c)(5) of the TCPA includes "telephone call" and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages. As illustrated above, the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5)."

*Jones v. Blackstone*, 792 F. Supp. 3d at 901.

**32**

# *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 900 (C.D. Ill. 2025)



"As for the Plaintiffs' reliance upon the FCC's 2003 Order to bring 'text message' within the purview of Section 227(c)(5), within the relied upon Paragraph 165, the FCC explicitly mentions "automatic telephone dialing system', 'artificial or prerecorded message', and 'automated or prerecorded telephone calls'. 18 FCC Rcd. 14014, 14116 para. 165. In footnotes appearing within Paragraph 165, only 47 U.S.C. § 227(b) of the TCPA is cited along with 47 C.F.R. § 64.1200(a). Section 227(b), not 227(c), addresses restrictions on the use of 'an automatic telephone dialing system or an artificial or prerecorded message.'"

*Jones v. Blackstone*, 792 F. Supp. 3d at 900.

**33**

# *Jones v. Blackstone Med. Servs., LLC,* 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025)



"The Plaintiffs cobble together the FCC's 2003 Order and several later FCC Orders (dated 2012, 2015, 2016), which they describe as 'unambiguous', together with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA…. The Plaintiffs' approach is problematic.

First, on its face and as just detailed, the 2003 Order explicitly references only Section 227(b).

Second, the portions of the FCC's later Orders the Plaintiffs discuss refer back to the 2003 Order which cites only Section 227(b) and themselves fail to include citation to Section 227(c)….

Third, 47 C.F.R. § 64.1200(e) incorporates the 2003 Order…. Again, the 2003 Order addressed only  Section 227(b)."

.

*Jones v. Blackstone*, 792 F. Supp. at 901.