UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____
CHET MICHAEL WILSON        )
          Plaintiff  )      NO: 3:25CV112(SFR)
                     )      December 4, 2025
 vs.                 )      2:03 p.m.
EASY SPIRIT, LLC          )
          Defendant.  )
_____)      141 Church Street
                                  New Haven, Connecticut


ORAL ARGUMENT


B E F O R E:

        THE HONORABLE SARAH F. RUSSELL, U. S. D. J.


A P P E A R A N C E S:

For the Plaintiff :  Anthony Paronich
                     Paronich Law, P.C.
                     350 Lincoln Street
                     Suite 2400
                     Hingham, MA 02043

For the Defendant :  Christine A. Montenegro
                     Lea Dartevelle
                     Melissa Capablo
                     Kasowitz LLP
                     1633 Broadway
                     New York, NY 10019

                     Tony Miodonka
                     Finn Dixon & Herling LLP
                     6 Landmark Square, Suite 600.

THE COURT:  Good afternoon.  Please be seated. All right.  So we're here today for oral argument in the case of Wilson versus Easy Spirit, LLC.  It is case 25CV112.  You will excuse my voice.  I have had laryngitis.  I'm feeling okay.  I don't sound so good. Let's hear appearances.  We'll start with the plaintiff.

MR. PARONICH:  Good afternoon, Your Honor. Anthony Paronich for the plaintiff.

THE COURT:  Okay.  Welcome.

MS. MONTENEGRO:  Good afternoon, Your Honor. Christine Montenegro with Kasowitz on behalf of the Defendant Easy Spirit.

MS. DARTEVELLE:  Good afternoon.  Lea Dartevelle with Kasowitz.

MR. MIODONKA:  Good afternoon, Your Honor.  Tony Miodonka, Finn Dixon and Herling on behalf of the defendant.

MS. CAPALBO:  Melissa Capalbo from Kasowitz.

THE COURT:  Welcome all.  All right.  So we're here on oral argument on the Motion to Dismiss.  And so why don't we hear first from the defendant as it is your motion.  We'll have some back and forth until we have heard everything we need to hear.

MS. MONTENEGRO:  Your Honor, we also have a demonstrative that we wanted to put up if that's okay.

We had submitted it to the court.

THE COURT:  I saw it on the docket.  Thanks for doing that.  So I think it will display up here.

MS. MONTENEGRO:  Thank you.  Your Honor, this case presents a very narrow but important question whether plaintiff has a cause of action under Section 22(c)(5) of the TCPA which grants a private right of action to a person who has received more than one telephone call.

Your Honor, we submit that the answer to this very question is no because plaintiff only received written text messages, not calls on his cell phone and Congress simply did not grant a private right of action in that circumstance.

As way of background, plaintiff, who has over 60 other TCPA actions, alleges that he placed his phone number on the Do Not Call List and Easy Spirit sent him several written text messages to his cell phone without his prior written consent and that he concedes each message included a straight-forward opt out mechanism. He can stop the messages by simply replying "Stop."  When he finally did so, the messages immediately ceased. Plaintiff does not allege any evidence that Easy Spirit placed any telephone calls to his cell phone.

Plaintiff's claim is brought solely under this

Section 227(c)(5) which provides a private right of action to a person, quote, who has received more than one telephone call within any 12-month period in violation of the regulations prescribed under this subsection, end quote.

As you will see from the statute, there's Section (c)(1) that deals with Congress gave the FCC the ability to enact rules and regulations that concern protecting telephone subscriber's privacy rights to avoid receiving telephone solicitations.

While Congress did grant the FCC the right to create rules to regulate telephone solicitation, Congress did not grant the FCC with any rights to expand or limit the scope of private right of action under that statute, and that's an important distinction about what authority Congress did or did not grant to the FCC.

Plaintiff does not want this court to look at the plain, unambiguous language of the statute and instead focuses his arguments on FCC regulations and orders.  Plaintiff argues that it's through these regulations and orders he supposedly has a private right of action because he received written text messages.

As we will explain in more detail later, the FCC rules and regulations do no such thing.  In fact, these rules and regulations have nothing to do with a private

right of action under Section 22(c)(5).

Nevertheless, for years courts treated the FCC's interpretation of the TCPA as binding based on *Chevron* resulting in a statutory interpretation that conflicts with the plain meaning of the statute.

However, the Supreme Court's decision in *McLaughlin* overturned *Chevron* and removed any remaining doubt about the role that the federal courts play in interpreting statute.

Your Honor, the Supreme Court expressly held that, quote, the District Court is not bound by the FCC's interpretation of the TCPA, end quote.  The Supreme Court further concluded that the District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation affording appropriate respect to the agency's interpretation and that phrasing is deliberate.  The Court emphasized appropriate respect but did not use the word "deference." Thus, when this Court interprets the private right of action under Section 22(c)(5), it must apply ordinary tools of statutory interpretation and cannot simply adopt the FCC's interpreted views.

As the Second Circuit court explained in Soliman, the statutory analysis begins with considering the ordinary meaning of the words at issue at the time

the statute was drafted and here on page -- slide 6, the plain and unambiguous language of Section 22(c)(5) authorizes a private right of action only for a person who has received more than one telephone call.  And this provision makes no mention of text messages or SMS messages and this omission is significant because Congress amended the statute extensively in 2018 to include the term "text message" in eleven different parts of the statute.

It's significant that when Congress amended the statute in 2018, it made no corresponding change to the private right of action in Section (c)(5) and left that provision untouched so that subsection only still covers telephone calls.

Congress also defined the term "text message" specifically and is shown on slide nine in Section (e)(8)(c) and in defining "text message," it said it is a message consisting of text, includes SMS message and MMS message.

But also in that definition, Congress specifically carved out call from that definition.  In that it says the text message does not include real-time two-way voice communication.  So Congress clearly intended the word "text message" to mean something different from "call" because it specifically carved out

"call" from that definition.

And as the Supreme Court has stated where Congress includes particular language in one section of a statute but omits in another of the same act, it is generally presumed that Congress acts intentionally and purposefully in a desperate inclusion or exclusion. Congress did not use the words "call" and "text message" to be interchangeable and this Court must read these words as having separate meanings.

In fact, it is well established that a court cannot read a statute in a manner that would render the meaning of those words meaningless and several courts have performed this very same analysis post-*McLaughlin* and have reached the very same result.

I would refer the court to *Jones v. Blackstone* which we cited in our supplemental brief.  There the Central District Court of Illinois held that, quote, based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages. Likewise *Davis v. CVS*, the Northern District of Florida found that Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted texts.  And it can provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private

right of action to those receiving telephone calls.

Likewise, the *El Sayed* case that we provided in supplemental filings, the Court specifically referred to Congress' 2018 amendments and recognize Congress understood the pertinent distinction between call and text and legislated mindful of that distinction.  Thus, the Court held that the statutory text here is clear and a text message is not a telephone call.  The distinction between an audio communication and written text is critical because *Soliman*, the second court, was asked to determine whether a written text violated a separate section, Section 227(b)(1)(A) which prohibits robocalls using artificial or prerecorded voice and there the Court held, when reviewing the TCPA, it said it makes clear that Congress meant voice to mean something audible, not a text message.  Thus, based on the plain reading of the statute, plaintiff's claims should be dismissed.

Plaintiff has cobbled together an argument not based on the plain meaning of the statute but based on various FCC orders and regulations to argue that he has a private right of action for receiving written text messages and basically --

THE COURT:  Before we get to the regulations and the orders and stuff, just to focus on the statutory text for a minute.  So I'm looking at the statute Section (c)

which I understand is where we are.

MS. MONTENEGRO:  (c)(1).

THE COURT:  So we can start with (c)(1).  So just in terms of because you had an argument and I think *Jones* sort of echoes this argument.  But I guess I'm wondering if I have to reach this piece of it.  But essentially, telephone solicitation so (c)(1) tells the FCC to do regulations.

MS. MONTENEGRO:  Pertaining to --

THE COURT: Essentially, related to the Do Not Call Registry and related to telephone solicitations?

MS. MONTENEGRO:  Correct.

THE COURT:  Telephone solicitations is defined by the statute to mean and this is in (a)(1) or (a)(4) of the statute.  Telephone solicitation means initiation of a telephone call or message for the purpose of encouraging the purchase or rental of investment and property, goods, services, so forth.  So (c)(1) tells the FCC to do regulations related to telephone solicitations?

MS. MONTENEGRO:  Correct.

THE COURT:  And then (c)(5) is the private right of action?

MS. MONTENEGRO:  Correct.

THE COURT:  That uses that same phrase "telephone call" but does not say message?

MS. MONTENEGRO:  Correct.  It does not say telephone solicitation.

THE COURT:  It does not say telephone message.

MS. MONTENEGRO:  Just to back up, we're not disputing the fact that the FCC has a right to enact rules and relations pertaining to the Do Not Call List.  In fact, they do their own enforcement actions.  That is not what we're talking about today.  The FCC does not have the power to change or expand (c)(5) which is a private right of action.

THE COURT:  So just to be clear, for you to prevail, you do not need to persuade me that a text message is not a message within the definition of telephone solicitation?

MS. MONTENEGRO:  Correct.  We would say that you would just need to look at (c)(5) and the wording there as well as the definition of text message, just so looking at it together because it refers to telephone call.  If you looks at text messages it's in other places in the statute, but it is purposely omitted there.

THE COURT:  Just to be crystal clear, telephone solicitation could include a text message in the FCC and --

MS. MONTENEGRO:  We wouldn't agree with that because if you look at the way the court has -- if you

look the way Congress has defined telephone message --
sorry, text message, it is a very specific definition.
The Congress has been very purposeful that it uses the
word "text message" when it means text message.

THE COURT:  Just pause you there.  And you don't
need to concede this.  But the question is to win, do you
need to persuade me that a text message is not a message
within the meaning of (a)(4)?

MS. MONTENEGRO:  Correct.

THE COURT:  "Correct" meaning you don't need to
persuade me?

MS. MONTENEGRO:  No, we do not need to persuade
you.

THE COURT:  Is the reason you said you don't
need to persuade me is because I'm not interpreting what
a telephone solicitation is?

MS. MONTENEGRO:  Correct.

THE COURT:  I'm interpreting what a telephone
call is?

MS. MONTENEGRO:  Correct.

THE COURT:  Doesn't it help your argument
potentially that that telephone solicitation includes a
telephone call as distinct from a message such that you
might think that the private right of action is
narrower --

MS. MONTENEGRO:  Correct.

THE COURT:  -- than a telephone solicitation, whatever it is that that means?

MS. MONTENEGRO:  Correct.  And that would be statutory interpretation.

THE COURT:  So I mean because I guess part of your brief I think was trying to persuade me that a text message was not a --

MS. MONTENEGRO:  Telephone call.

THE COURT:  -- was not a message.

MS. MONTENEGRO:  Yes, correct.

THE COURT:  Which I think is a harder sell.  I do know that the *Jones* case I think rests in part on that.  But I don't know that the court had to reach that issue.

MS. MONTENEGRO:  I wanted to walk through and the reason I wanted to walk through their argument is just because I thought it would help because *Jones* did a very good job of walking through what I believe will be plaintiff's argument and explaining why the regulations and orders, A, do not pertain to (c)(5) and, B, it is Congress who controls the statute and what private right of actions can be granted.  It is not the FCC.  They can't expand or limit.  I had a few slides that kind of go through the FCC admitting that it does not have that

power.

THE COURT:  We can turn to the regulations in a minute.  But I want to be clear on the statutory language first.

Based just on the statute and not turning to the regulations yet, I guess is there a reason for thinking -- now I'm looking at the statute section (b)(1)(A), is there an argument that to make any calls -- so this is the sort of robocall provision.

Do you have an argument that "call" in (b)(1)(A) could mean something different than telephone call in (c)(5)?

MS. MONTENEGRO:  So (b)(1)(A) says any call which is different than more than one telephone call.

THE COURT:  So I'm not worried about any or sort of one or more than one, just the word "call."  Could "call" have a different meaning there than telephone call?

MS. MONTENEGRO:  Again this kind of goes back to when you are looking at prohibitions that the FCC can regulate versus what Congress did under the private right of action.

So Congress granted two very narrow private rights of action under the statute and so -- they have been very focused on what FCC is enacting rules and

regulations.  An example, is (b)(1), when looking under (b)(1) or (c)(1), that's the FCC.  They are allowed to rule and regulate with respect to Do Not Call Lists.

Separately, is the actual private right of action.  It is in (c)(3), (c)(5) or in this section is (b)(3) and so it is very different.  There's been a lot of confusion where the rules and regulations and orders are kind of being put together at the same time as a private right of action.  I think it is causing a lot of confusion as opposed to looking at the actual text that's being sued under.

THE COURT:  That's what I'm trying to do is look at the statutory text.  Not look at the regulations right now.  I'm wondering if there's a basis for and then in the next --

MS. MONTENEGRO:  So I would say if we look at the word "call," if Congress wanted a private right of action under (c)(5), it defines it as telephone call.  It did amend the statute to add text message in many other places in 2018.  But it did not amend certain sections of the statute.  Even when we're looking at (b)(1), it did not amend that part of the statute to say text message. You are referring to a call.

When you look at the definition of text message, which I think is critical here, and this is part of the

statutory interpretation, it actually is excluding telephone call from that definition because it says text message means a service that enables a transmission of a text message.

THE COURT:  Just to be specific, it isn't excluding call.  It is excluding what you say a call is which is a voice to voice --

MS. MONTENEGRO:  Real-time two-way voice or video communication.  It is excluding that from what a text message is.  There's different amendments.  We have up on screen eight where Congress amended the statute and puts in text message or text messaging service.  It is very purposeful when it does add those words into the various parts of the statute.

THE COURT:  Okay.  So I think you were going to move onto the regulations.

MS. MONTENEGRO:  So plaintiff has cobbled together an argument, not based on the plain meaning of the statute, but based on various FCC orders and regulations to argue that he has a private right of action for receiving written text messages.

He argues because the TCPA directs the FCC to develop rules and regulations that prohibit telephone solicitations to members on the Do Not Call List, that's pursuant to (c)(1) and (c)(3), that the FCC's resulting

orders and regulations somehow expand the scope of a private right of action.

But there's several problems with plaintiff's argument. First, there's no dispute that the FCC can regulate those items under (c)(1) and (c)(3).

However, the TCPA does not mandate that the FCC can develop regulations pertaining to a private right of action created by the statute and that makes perfect sense because the FCC does not have authority to expand or limit a private right of action. We have cited this case in our brief, the supplemental brief at page 8, the *Alexander v. Sandoval* case and that case is from the Supreme Court and says private right of actions to enforce federal law must be created by Congress. The language of the statute and not the rules must control. It most certainly is incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. That's precisely why we are very focused and we think you can make a determination from the language of the private right of action in the statute because that's what controls, the statute. That's what Congress has authorized. The rules and regulations do not control.

In fact, the FCC itself acknowledged that limitation in its 2003 order which is at slide -- we have

it up on slide 16 where the FCC says it declined to make any determination about the contours of the TCPA's private right of action, because, quote, it is for Congress, not for the commission, to either clarify or limit this right of action.  And we agree with that statement.  It is for Congress.  Not for the FCC to create a private right of action that extends to text messages and Congress simply chose not to extend that private right of action to written text messages when it amended the statute in 2018.

Another problem with plaintiff's argument is that the FCC regulations and orders do not even concern the private right of action under (c)(5).  The court in *Jones v. Blackstone* observed the FCC's interpretations of calls to include text messages potentially does not even apply to Section 227(c)(5) and the regulation that they are going to focus on, the operative regulation, simply mirrors the language that prohibits telephone solicitations as set forth in (c)(1).  The regulation, if you look at it, has nothing to do with a private right of action under (c)(5).

The plaintiff will also probably draw your attention to Section (e) of that regulation because it uses the word "text messages" in that regulation.  And there's two points I want to make about that regulation.

That regulation, if you look it, says the rule set forth in the paragraph C and D in this section are applicable to any person or entity making telephone solicitations or marketing calls or text messages.  It is referring back up to that Section (c) that I was referring to earlier that deals with Section 227 (c)(1).  It is not talking about Section (c)(5).

This provision is further limited because it says to the extent described in the commission's report and order and gives the docket number.  That's referring to the 2003 order.

So as the *Jones v. Blackstone* court made clear what is really referencing is the 2003 order that deals with 227(b) which deals with robocalls.  So even if you look at this provision and you are considering it, this doesn't even deal with (c)(5).  The *Blackstone* court I think did a very nice job of explaining this actually deals the 2003 order and the 2003 order just deals 227(5)(B).  It has nothing to do with (c)(5).

We'll turn quickly to that order 2003 and that's up right now.  This is the provision that plaintiff's focused on 165.  We affirm that under the TCPA, it is unlawful to make any calls using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  This is again is the

language from 227(b).

So again, as I mentioned, these rules and regulations have nothing to do with (c)(5).  As we stated in our brief, the *Sandoval* case, the Supreme Court decision makes clear that it is only Congress that can expand and limit the scope of a private right of action.  It is not the FCC.

THE COURT:  I think plaintiff's argument is, look, here's the FCC taking the word "call" in the statute and saying "call" includes something they are calling a voice call and a text call and so now that call word they are referencing there is in (b) of the statute, not (c).  But I'm not hearing an argument for why the word "call" means something different in (b) than it means in (c) other than I think the response was one is a private right of action and one is not.

I think plaintiff's point would be they both say "call" and the agency is saying a "call" is when it is by voice and you can call someone by text and I should give some level of respect or deference to that determination, so I guess what's your response to that argument?

MS. MONTENEGRO:  First, I would say that the court said that *McLaughlin* said that District Court's should apply appropriate respect.  They didn't use the word "deference." They were clear about respect.

THE COURT:  At least arguably at *Skidmore* deference, no.

MS. MONTENEGRO:  *Skidmore* does not use the word -- I know that's a case that's been circulating and parties have been saying it says "great weight." Actually if you look at the decision, it does not say "great weight."  It says "weight."  It says "consideration." It does not use the words "great weight."  It says that the orders would not control in those circumstances and it's actually for the court to decide and *Skidmore* I think is consistent with *McLaughlin*.  If you look at the two decisions, I think it is consistent with what the Supreme Court said.

THE COURT:  But at some level of I decide as a legal issue, but I'm going to give some level of consideration to the agency and there may be different questions sort of depending on how fact bound it is or what have you, what level of expertise the agency is bringing to bear that may impact that level of respect.

MS. MONTENEGRO:  The court also said in *McLaughlin* and I think *Loper Bright.*  They are saying at the end of the day, it's up to the Court to decide and it's the Court to use its ordinary statutory principles in reviewing the actual statute.  And there are times where the Court will depart from what the FCC says and

the courts said that's fine.  It is the court that is an expert at actually reviewing statutes and making statutory interpretations.  That's their function under this Article III.  It is not that the FCC has superior knowledge or expertise.  We're not dealing with something that's a fact-finding determination or ruling or policy. We're actually dealing with words of a statute and we're being told what did Congress say here, what did it mean. When you look at the actual statute and Congress is the agency that can give those private rights of action.  Not the FCC.  It is Congress.

When you look at the actually words of the statute, they amended in 2018.  They did not include the word "text message" in Section (c)(5) and so if call and text message mean exactly the same thing, it wouldn't make sense for them to make the revisions they did to the statute.

In fact, they also carve out in the definition of text message, that it is not a two-way real call.  I don't have the exact verbiage in front of me.  They are making this distinction.  Congress is showing that the word "call" and "text message" are not meant to be interchangeable.  They are meant to have two different meanings, and it would almost render the word "text message" meaningless if we were to say it is

interchangeable with call.  That's not what Congress did to the statute.  It updated it but did not include the word.

THE COURT:  Do you have a sort of definition of call like what a call is or what a telephone call is?  Is there a --

MS. MONTENEGRO:  It would be audible.  It would be some type of audible communication whereas when you look at a text message, it is a written message and even *Soliman* said made that distinction between written and audible communications and a text message is a written communication.

THE COURT:  So you would rest on sort of written versus audible?

MS. MONTENEGRO:  Yeah.  The fact that the FCC and just ordinary usage.  If someone said they are going to call me, I wouldn't think they are going to start texting me.  I would think they are going to call me.

I think when you look at the other courts and they look at how we speak nowadays, we refer to call versus text.  We don't say I'll call you and I'm expecting to receive a host of text messages and Congress updated the statute in 2018, so they were very aware of this technology when they did that.

My very last argument, Plaintiff had raised this

argument that the APA's arbitrary and capricious standard applies. Again that is sidestepping *McLaughlin* and *Loper Bright*.  This is not a case that's brought pursuant to 702 or 703 of the APA.  We are not challenging an agency action. That is not what's happening here.  All we're asking for is for the court to review questions of law and interpret the unambiguous statute and as *McLaughlin* made clear when you are doing that, it does not involve invalidating agency action.  All you are doing is reviewing the statute and determining whether or not a defendant is liable and that does not implicate the arbitrary and capricious standard under APA.

In fact, *Loper Bright* made very clear in those situations the arbitrary and capricious standard does not apply because the Court is just answering a legal question.

I know plaintiff is going to get up here and put up a bunch of cases that have come down recently post-*McLaughlin*.  We have cited our cases.  I'm sure he's going to cite his.

A lot of the rulings are coming out of confusion.  One main confusion is that a lot of the courts believe that the statute has not been amended since 1991.  So they are looking at the statute, not realizing it was amended in 2018 because some parties are

not arguing what I'm arguing today to you and have not put this in their papers.

So the Court is assuming that they are looking at a statute from 1991 and they are struggling with the fact that it says the word "telephone call." Congress didn't know about text messages back in 1991. So we have to modernize the statute because otherwise it is completely outdated. But no one is arguing, very few people are arguing and that's why I think *Jones v. Blackstone* is an important case and *Davis v. CVS* and the El *Sayed* case, but no one arguing that the statute has been amended in 2018. No one has to struggle with that. The technology was there and Congress was purposeful when it legislated and what it did amend and what it didn't amend in that statute and did not provide a private right of action in those circumstances. And I think another problem with some of those cases are --

THE COURT: Can I pause you on that last point? Do you have a view of like what time frame I'm looking at in understanding what is meant by telephone call? Am I asking what do the people, you know, what do people commonly understand a telephone call to mean in 1991? Am I asking what did they commonly mean in 2018? I'm wondering is there a temporal aspect. Are we asking what does it mean today?

MS. MONTENEGRO: What does it mean today because Congress amended it in 2018, and I think you can look at it today and made that determination. What does it mean based on how Congress amended in 2018. They were very aware of text messages and they chose not to add it. So I think you would be looking at the statute from today what the ordinary meaning of the statute means. It says the correct way to do it under Supreme Court is as it was drafted. I guess it was the last amendment that deals with this issue is 2018 to this statute.

The other point I would like to make is that also the cases that plaintiff relies on a lot of them are not really engaging in the statutory analysis or they're just deferring to what the FCC had said because I think there's been a lot of confusion about the rules and regulations, what they say, what they pertain to.

I would implore the Court to look at *Jones v. Blackstone.* I think that case goes through all the different orders and thoroughly explains why those rules and regulations are not controlling here and why it would just be the plain language of the statute. I'm available obviously for more questions.

THE COURT: Let me ask about the most recent regulations that I guess were proposed in 2023 and took effect in 2024 that say, you know, essentially Section

(c) includes text messages of the regulations.  So you're not contesting that the FCC per its regulations can under (c) of its regulations can regulate and impose sanctions on people who are texting people who are on the Do Not Call Registry.

MS. MONTENEGRO:  Absolutely.  We do not contest that the FCC has the right to do that in that respect. That's separate from the private right of action.

THE COURT:  When they clarified or codified or what have you in 2024 with that regulation that says that we need to, you know, include the do not call text messages and do not call registry, you are not contesting they can do that.  You are saying that relates to what they can do under the earlier part of (c) but not (C)(5) --

MS. MONTENEGRO:  And then also one other point I would like to make.  It deals with actually -- it is further restrictive and I have the language.  This is the most recent provision of the 47CFR that's been amended on the order that went into effect in 2024.

So if you look at the actual statute, it amended Section (e) of that statute and now I have it up on the screen.  It says text messages.  So that's what we're referring to as we were talking.  But then that actual regulation is further restricted because then it says to

the extent described in the Commission's Report and order CG docket number 02-278, that's a 2003 order that I was talking about so that's further limiting it to actually 227(b) which deals with automated calls.

THE COURT:  Can you really view that as limiting?  It's saying text messages for (c) and (d).  I guess in what way --

I guess I read --

MS. MONTENEGRO:  If you look at the whole statute together -- I don't have it all in front of me. Section (c) this is what we're showing you.  This is Section (c) that it is referring to.  So this is the regulations that Congress said FCC can enact rules and regulations dealing with initiating any telephone solicitations.  That's Section (c).  If you go to (e). It says the rules set forth in paragraph (c) -- that was the (c) that we were looking at -- of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages, and then it says to the extent described in the Commission's Report and order.  To the extent it is described in the 2003 order.  When you go to the 2003 order, it only deals with 227(b).

THE COURT:  I follow you there, but I think what that is doing is saying text messages are part of the Do

Not Call Registry.  That's what all the notices of the proposed rule and stuff that's their intent that that applies and I think the (b) relates to robocalls and stuff.  So I took that reference to mean, you know, as we described in the 2003 regulations that this stuff applies to cell phones and what have you.  Are you saying that (e) means it is really just about (b) and not about --

MS. MONTENEGRO:  If you look at the actual underlining order that it's citing there, it is referring to 227(b).  That's the 2003 order.

THE COURT:  For what purpose is it referring to that I guess?

MS. MONTENEGRO:  To the extent that it is described in that order that it is dealing with (b) which (b) deals with automated telephone systems.

THE COURT:  I know that's an order that talks about (b).  But for what purpose is this Section (c) referencing it?  The rest of the thing says that the rules sets forth in paragraph (c) and (d).  In paragraph (c) is the Do Not Call Registry are applicable to text messages.  To the extent described in, so what work is to the extent described in?  They are telling us it is applicable to text messages.  The Do Not Call Registry is applicable to text messages, so is there some narrowing function and if so, what is it?

MS. MONTENEGRO:  Our position is that when you look at this provision, it is further narrowed because it is talking about to the extent of the 2003 order.  When you look at the 2003 order, it is dealing with automated telephone dialing systems.

THE COURT:  Is your position that this means text messages are not at all part of the Do Not Call Registry?

MS. MONTENEGRO: Our position is that this provision is further limited by the 2003 order.

THE COURT:  I will hear from the other side.  I would be interested in knowing concretely how I guess to what respect but we can push on that later.  Thank you.

MR. PARONICH:  Thank you, Your Honor.  So as the Court knows, we're here on the Defendant's Motion to Dismiss which advances two arguments.

The first is that text messages aren't telephone calls under the TCPA and the second was that a cell phone can never be a residential line for purposes of the National Do Not Call Registry.

In the interest of time, unless the Court has specific questions, I will be very brief on the residential issue at the end because I didn't see this part of the presentation.

To focus on the text message argument, the

defendant's argument depends on a present day way of speaking, treating call as voice only and text as something categorically different.  That's not what textualizes mandates.  In order to ask and understand what Congress meant, our position is that the Court should look at the definition when the statute was enacted.

And with respect to that that issue, it is something the Second Circuit has considered, as we point out in our briefing.  The Second Circuit has already treated text messages as calls under the TCPA relying on the Supreme Court's own statement in *Campbell-Ewald.* That's on framing.

The FCC's long-standing interpretation of more than 20 years and the Second Circuit said it in what appears to be the clearest possible terms.  It is undisputed that a text message to a cellular telephone qualifies as a call within the compass of the TCPA.

THE COURT:  What case are you citing there?

MR. PARONICH:  That was in *Melito versus Experian* and also in *Duran versus La Boom Disco*.

THE COURT:  It was undisputed in those cases?

MR. PARONICH:  I believe, Your Honor, the quote was from the Supreme Court, so the original it is undisputed came from *Campbell-Ewald* before the Supreme

Court.

THE COURT:  Do you know if that issue was disputed in either of those Second Circuit cases?

MR. PARONICH:  I do not know, Your Honor.  In *Melito*, as the Second Court recognized, although the TCPA does not explicitly mention texts, the FCC has interpreted the act to cover them.

Of course, the issue of whether text messages constitute calls under the TCPA, there's been a lot of notices of supplemental authority.  It is plainly a hotly contested issue.

However, the FCC -- our position, to be clear, it is not that blind deference is required.  It is that you consider the agency's interpretations and their function over a 25-year period of interpreting the TCPA and, in fact, we are preparing final -- what I hope is a final Notice of Supplemental Authority from a court in Florida last week that didn't engage in the 20-page analysis of this issue.  *Office Depot* is the defendant.  Like I said, we'll be preparing it shortly.  I think it is critical to consider because it comes after the *CVS* case cited.  The El *Sayed* case cited and it explains that the FCC has considered this issue, considered it long and hard and we are not engaging in blind deference.  We're engaging in appropriate respect.

THE COURT:  Just to push a little on what standard I look at when considering the deference to the agency because there was some mention of arbitrary and capricious.  I don't hear you arguing that at the moment.  Is it the due respect -- is it due respect to the agency's interpretation or what world are we in in terms of respect for deference?

MR. PARONICH:  I think there can't be any dispute that due respect is required.  I think that's why that's where the majority of the case law has come out post-*McLaughlin*.  It is not saying that the FCC said it so it must be so.  It is saying it is an issue that the FCC has considered.  I think the appropriate analysis for the Court as the case laws continue to develop, those rulings should be given not deference but due respect.

THE COURT:  You would agree that I would not need to be setting aside essentially a regulation.  It is a question of interpreting the private right of action?

MR. PARONICH:  That's right.  There's been no decision out of the seven, eight or so that have come out that held that a ruling to the contrary would be setting aside the ruling.  I think the correct analysis is simply due respect, but that's materially different than blind deference which I think some defendants in these cases are arguing is that oh, well, you don't have to worry

about what the FCC said.  I don't think that's right. You don't have to blindly follow it, but I think a material consideration of the reasoning and thinking would be appropriate here.

The *Melito* case continued to explain why the treatment fits the TCPA's purpose that text messages are calls.  It is because text messages present the same nuisance and privacy invasion envisioned by Congress when it enacted the TCPA.  That's what the Do Not Call List is to protect.

THE COURT:  Was that a case?  I don't have that one in front of me.  Was that about standing?

MR. PARONICH:  *Melito versus American Eagle* and *Experian* was about standing, also discussed the text messages under the TCPA.  I believe a 2016 ruling.

So that is what the TCPA is designed to protect. The alternative consideration is pretty severe here.  The Section 227(c), it is not written as a narrow technology dependent subsection.  It is a privacy protection delegation and so, as we've discussed throughout the day and I will try not to repeat things, Congress empowered the FCC to make these determinations.

It is a very fair point that the FCC wasn't -- they weren't mandated to expand a private right of action.  But that's not what we're saying they are doing.

That's not what the majority of courts have held that have considered this issue.

*Jones versus Blackstone* was if not the first, it was the second order to come out after *McLaughlin* and many courts have considered it as the defendant is asking this court to do as well.

In fact, in our Notice of a Supplemental Authority, *Mujahid v. Newity* that was decided a week or so ago, perhaps two in the Northern District of Illinois while the *Jones versus Blackstone* appeal is pending before the Seventh Circuit.  The Court didn't stay the action, didn't defer the ruling and considered *Jones* and disregarded it as inconsistent with the statutory text and Seventh Circuit precedent.

We are certainly not in a position to predict what the Seventh Circuit is going to do on the *Jones* appeal.  But we can look at what Seventh Circuit District Courts have done in the face of knowing that that appeal is pending.

So the practical test here is if that we're so technology bound and limited, it is going to make one of the most popular consumer protection programs, The Do Not Call Registry, a complete relic.  Luckily, that's not what the majority of cases have held.

THE COURT:  Why would it make it a relic?  I

mean I don't hear -- I guess holding that the private right of action is restricted to voice. We'll call them voice calls for lack of a better term. Would do anything to touch the FCC's ability under its regulations which are pursuant to (c)(1) of the statute which deal with telephone solicitations to regulate text messages. So the FCC can still have rules and enforcement related to text messages and the Do Not Call Registry. It is just that plaintiffs wouldn't be able to enforce under a private right of action; is that right?

MR. PARONICH: That is right, Your Honor. A more precise statement would have been a ruling that a text message is not a call would completely eliminate a consumer's ability to enforce the private right of action of the TCPA. You can put your number on the Do Not Call Registry and any business can text it, it doesn't matter if you say stop, it doesn't matter that you are on the National Do Not Call Registry because a text message won't be a call.

THE COURT: What recourse would people have with respect to having the agency's help? I mean how does the FCC get involved, if you know, when shutting down companies from texting in violation of the Do Not Call Registry?

MR. PARONICH: So if Your Honor's question is

how does the FCC enforce its rules, it is a long time ago now, but there was a really large enforcement against Dish Network ten or fifteen years ago.

The short answer is they work with Department of Justice who actually ends up filing the cases.  They have the resources they have.  If you look at FCC enforcement actions compared to how consumers can fight back, there's no comparison.  The statute gets enforced far, far, far more by consumers than it does by the FCC.

I think as Your Honor prompted during the defendant's presentation, the real interpretation here even looking at the private right of action, putting the FCC to the side, the private right of action we are talking about call.

In our brief, we talk about the dictionary definition of call to communicate with or try to get in communication with a person by phone.  The transmission of a text message to a consumer's telephone squarely falls within the definition of the word "call."  The purpose is to communicate with another person via phone.

THE COURT:  Let me pause you there.  Is that the Webster's Third International?  Was that the case?  Is that definition drawn from a case that cites --

MR. PARONICH:  I don't know if it is the Third. I believe that's the 1991 definition.  It is in our

brief.  I don't want to misspeak in terms of which definition it is.

THE COURT:  Got it.  So that would be sort of the definition of call that you would rely on?

MR. PARONICH:  I think the dictionary as opposed to kind of making sure I didn't misspeak or misread, my point is one of the dictionary definition that the Court determines is appropriate at the time which we submit is 1991 that would be appropriate.

THE COURT:  Why is that the right time period to look at rather than 2018?

MR. PARONICH:  Because in 1991 is when the law was passed.  I agree with my sister that the word "call" was not amended in 2018, so it was left there with the definition being sufficient and the only --

THE COURT:  So I guess when a statute is updated, if the portion you are looking at was not updated, you would use the old time period and you would just apply the new time period to the part that's updated.  I wonder if there's any authority on how the timing, when you are looking at contemporaneous understandings, how you deal with statutes that have undergone amendment.

MR. PARONICH:  It is a good question, Your Honor.  I'm not going to pretend like I know off the top

of my head standing here.  But I would also venture a guess.  I don't have the definition in front of me.  But I would be interested.  I don't know if the 2018 definition would be so materially different.  I do know that the focus is on communication via telephone.

THE COURT:  Let me stop you there.  There seemed to be a lot of definitions of "call."  And so, you know, one version of a call is a sense of summoning or commanding.  Essentially, you call for people to either gather or to speak to you, so it is like a call for communication versus you can see a message as you're transmitting information to someone.

So I guess how do you square your view of call with the definition of telephone solicitation which I take it to be from the same time period?  Why would they say telephone call or message there and they just say telephone call in (c)(5)?

MR. PARONICH:  I think -- I thought it was slightly later that that message came.  I don't think that's Your Honor's material point because the FCC took time to do the rule making procedure.

THE COURT:  Sorry.  Just to be clear.  (c)(1) gives the FCC authority to do rulemaking about telephone solicitations?

MR. PARONICH:  It does.

39

THE COURT:  Then (c)(5) telephone solicitations defined to be telephone call or message?

MR. PARONICH:  Yes.

THE COURT:  (c)(5) just says telephone call.

MR. PARONICH:  The private right of action.

THE COURT:  The private right of action.  Were those enacted at different times you think?

MR. PARONICH:  I thought the message came from the FCC which came slightly later.  I'm not certain.  I would be happy to submit a supplemental.

THE COURT:  Sorry.  Where I'm getting message from is from the definition of telephone solicitation.

MR. PARONICH:  I misunderstood your point, Your Honor.

THE COURT:  Which is in the statute.

MR. PARONICH:  Yes, Your Honor.

I thought you are talking about what I thought was the '03 order.

THE COURT:  I'm focused on the statutory text at the moment.  So my understanding is telephone solicitation is defined as telephone call or message, step one.  Step two is (c)(1) talks about regulations related to telephone solicitations.  (c)(5) talks about telephone calls.

MR. PARONICH:  Yes.

THE COURT:  So one would think that telephone solicitation is something broader than telephone call because it includes the word "telephone call" and "message"?

MR. PARONICH:  Yes.

THE COURT:  Given that framework, there's some challenge of persuading me that a text message is following on the telephone call side of a telephone solicitation rather than the message side of the definition of telephone solicitation.

So that I view that as what you would need to persuade me on.  If I've missed some logic there, I would be happy to stand corrected.  If not, I think there's some challenge of persuading that a telephone -- that a text message falls under telephone call rather than message and maybe message means and I know this predated text messages at all.  But I would be interested in your argument on that.

MR. PARONICH:  It is a brief one because that would be exactly my point is that message was meant to be something even broader.  It is an issue of the technology in 1991.  That's exactly -- so when I was tying the argument to the dictionary definition, the segue I was going to make was into the *Satterfield* case.  There's been one Circuit Court of Appeals that addressed this

issue directly and it arrived on the aside of what we're advocating here.  It's looking through the dictionary definition of telephone call at the time and finding it as a primary purpose to communicate via telephone.  I understand the argument that, well, should message mean -- how can you square a text message being different than a message and Your Honor's point would be exactly ours or the issue you raised would be exactly our point which is that in 1991 that message could have been broader.

I think an important argument to make that keeps tying how calls could envision messages is to also look at other portions of 227(b) because both 227(b) and 227(c), as Your Honor has said, use the word "call."

So in 227(b), it refers to things with calls like pagers which as we know deliver at the time deliver the call as a text, so understanding that making calls to devices that appear as written messages should be included in the TCPA. That's what *Satterfield*, the only Circuit Court of Appeals to address that issue, squarely holds and that's supported by the Second Circuit's multiple statements on the issue.

And there's been a lot of talk about *McLaughlin* and but it doesn't change the force of those Second Circuit decisions and if our argument was that this Court

was automatically bound by what the FCC said, we would be wrong. It wouldn't be a credible argument. I want to be very clear I think there's been some -- especially with the subsequent cases some kind of unclear standards with this. I appreciated the Court's prior question and I will risk repeating myself. It is an issue of appropriate respect. It is not blind deference. It is a consideration to decades worth of work by the FCC on this issue. And that is as some of the decisions that we cite and I know this is a supplemental authority. They recognize that work and they recognize that effort and our position is that the court should hear.

Trying to move along, Your Honor. I know the defendants have also provided their own supplemental authority and our position is that those cases don't engage with the textualist argument as a whole. That's why I also mentioned the *Mujahid v. Newity* case. I think it is really noteworthy that a Seventh Circuit District Court while the *Jones* case was on appeal, rejected *Jones.* And there's also this case that we'll be providing a supplement on eminently from the Eleventh Circuit. It is rejecting the *El Sayed* and the *Davis versus CVS* case so the most recent decisions on a text messages as calls have all found in favor of the plaintiff and so there's the issue with -- to slightly pivot, Your Honor.

The issue with using modern parlance to say oh, well, it couldn't possibly mean text messages.  They couldn't be implicated by the statute because they didn't exist in 1991.  It has to do with the kind of new applications that can always arise under law.

A hypothetical that some courts have entertained with this argument it relates to laws regulating vehicles but that they also, of course, apply to cyber trucks which I think most wouldn't say or some would say that's not necessarily a traditional car or it's an advancement in the technology.

Same here whereas a call you are trying to communicate via telephone, it is encompassed in the same thing.  That is different than an email message.  Some defendants would take the position that if I get an email to my cell phone, is that a call or if I get a push notification is that a call?  They are not because that's not telephone directed conduct.  A text message and a voice call are directed to a telephone.  An email message, a push notification, they are to an email address or through an app, so this isn't -- our position in the majority of cases in courts that have decided this issue, it is not opening up the flood gates of all sorts of technology.  It is telephone-initiated contact.

THE COURT:  Your view is it is different because

44

it is uniquely telephone based?

MR. PARONICH:  That's correct, Your Honor.  I think it critical that it is telephone based.  It is a Telephone Consumer Protection Act, telephone-based conduct that includes text messages and that includes voice calls and so the defendant in their briefing also relies on *Soliman*, the Second Circuit case, for the idea that texts and voice are distinct, and so I would concede that a text is not an audible voice, right, but the present issue why that Second Circuit decision didn't mention *Melito* or the *Duran* is because the question before the court was a plaintiff was saying a text message I received.  Our position is that that's a prerecorded voice call under the TCPA which is, of course, not our position here.

Our position we do not have a cause of action saying that a text message is a prerecorded voice.  But a text message is a call even if it is not a voice call which I think is a good segue to the 2018 amendment that became such a principal part of the defendant's argument here.  It is notable that the TCPA Section (b) where almost all courts consider the issue, have found text messages to be calls and (c) which uses the same word "call," they weren't amended to be limited to voice calls either because they already covered text messages.  There

was no need to amend the statute to say text message because a text message is a call already for purposes of the TCPA.

THE COURT:  But looking for a minute at those amendments -- so that was Section (e); is that right?

MR. PARONICH:  I believe so, Your Honor.

THE COURT:  This is the 2008 amendments.

MR. PARONICH:  The 2018?

THE COURT:  Yes, 2018.  I'm looking if that section uses the word "call" at all.

MR. PARONICH:  Your Honor, I will inform you, otherwise unless Your Honor wanted to hear anything about the residential argument, I'm happy to field any questions and reserve any time for rebuttal.

THE COURT:  Thank you.  I will circle back.  I have a few questions about the sorts of due respect to the agency's prior statements about calls being including text messages.  I wasn't able to find any I guess reference by the FCC to this subsection telephone call as it appears in Section (c) of the statute.  I mean it seems like 2003 was about (b).  There were some enforcement actions you pointed me to that dealt with telephone solicitations I think, so they were dealing with essentially regulations or rules coming out of (c)(1) so has the FCC ever squarely said telephone call

means text message for purposes of (c) or (c)(5)?

MR. PARONICH:  Yeah.  I think our argument, Your Honor, would be the FCC has repeatedly said a text message is a telephone call and then the argument is that call is the same word in (b) and (c), but, no, I'm not aware of a dedicated rule making order that says as relates to (c)(5) a text message is a call.

However, the definition of telephone solicitation and all these things, you know, they are there, but I want to directly answer the Court's question.  No, I'm not aware of that.  Our argument we would say is a distinction without a difference because of the word "call."

THE COURT:  Do you have a view on this most recent I guess regulation?  It adds text message to the -- I think this is Section (e) that we had the slide up about.  That references the 2003 order.  I'm in the regulations at (e).  And I think it is up if you have it on here.  Do you have a view about what this means to reference the 2003 regulation?  Why that's being referenced?

MR. PARONICH:  Not anything that's inconsistent or materially different with what our position has been already.  I think it continues to reference that text messages can be calls. I think that and I've conceded and

I think I must and I think the other courts have recognized. I'm not aware of any FCC order directly on (c)(5). The point is just that the FCC and that's why I think the appropriate respect is an important consideration. It is a body of work from the FCC. They have made clear for over 20 years text messages should be considered calls. We have the dictionary definition of calls but also we have the same word "call" in (b) and (c).

THE COURT: Thank you.

MR. PARONICH: Your Honor, to be clear, there's no argument necessary on the residential issue?

THE COURT: No. I don't think so. I didn't hear anything from them on that. I think it is covered in the briefs.

MR. PARONICH: Thank you, Your Honor.

THE COURT: I will hear any response.

MS. MONTENEGRO: Thank you, Your Honor. Just very briefly. Counsel had referred to the *Newity* case. It is not a circuit court decision. It is a district court decision out of Illinois that he had submitted. We just looked at the decision. There the Court said although *Newity* is correct that 22(c) does not use term "text message," that is hardly surprising given that the statute was enacted in 1991 before the first ever text

48

message was sent in 1992.  This was a court not understanding, not knowing at the time there was a 2018 amendment that used the word "text."  A lot of these decisions when they are reviewing and coming up with the conclusion that call means text is because the fact there wasn't someone on the other side arguing that the statute had been amended in 2018.

So I know my adversary said you should look at the statute back in 1991.  That would be ignoring Congress's amendments and ignoring what they did in 2018.  That's not how courts analyze statutes. They don't ignore amendments.  If that's the case, then why are we looking at this Section (e) and looking at what happened on text messages?  Then we would be ignoring amendments and going back to the earliest version of a statute or regulation.  That's not how courts analyze statutes.  They look and take into account the amendments and Congress is purposeful when it does amend in one section and doesn't amend in another.

THE COURT:  How do you respond to his argument, though, that they don't feel the need to amend the earlier sections because there had been such a consensus that calls included text messages?  I guess this gets to the point I was trying to see if somewhere in (e) when they were amending it, did call already exist in (e).  I

thought one of your slides might have shown that it did which would help your argument.

MS. MONTENEGRO:  If Congress really wanted to make everything consistent, it could have put telephone solicitation into 227(c)(5).  If the word "telephone solicitation" means calls and messages and includes text messages, they could have easily then amended that section of the statute and given it a private right of action that is as broad as (c)(1) and (c)(3) to include text messages, calls, all of it.  They did not do that.  That was very purposeful that they did not do that.

Also in (c)(1), in here, even in (e), it is very distinct saying telephone solicitations, telemarketing calls or text messaging.  That also even shows that telephone solicitations means something even different than text messages because the FCC is breaking it out into telephone solicitations, telemarketing calls or text messages.  I think that even further undermines plaintiff's point that telephone solicitations includes text messages.

THE COURT: I think telephone solicitation has a commercial purpose to it I think.  I think you could have a text message that is a telephone solicitation but also a text message that's not because I think it has to be for advertising or so forth.

MS. MONTENEGRO:  And I guess earlier we were talking about this provision.  I think it is restricted.  Our position it is restricted by 2003.  Putting that aside, let's not focus on that restriction.  This is dealing with the FCC's ability to do its own enforcement actions under (c)(1) and (c)(3).  We do not dispute the fact that the FCC has enforcement capabilities and can do whatever action it wants to prevent telephone solicitations for individuals who are on the Do Not Call List.  We are not at all opposing that.  We do not disagree with that.

But what Congress gave a private right of action for is for telephone calls.  If Congress wanted to make more expansive and include telephone solicitations, it could have done so or if it wanted to add the word "text message," it could have done so and it has not.

I know my adversary referenced the *Campbell, I think* the *Facebook* case, those are Supreme Court decisions.  They did not rule that text message equals call.  At that point, the Court was just assuming that was the case.  There not a determination made on that fact.

And just lastly, as I said, Congress is the one that ultimately controls what the statute, what rights they give for private right of actions.  If there's a

conflict between what the FCC orders say and the statute, the *Sandoval* case that we cited in our supplemental briefing makes clear that it is the statute that controls and only Congress can give -- has the right to create a private right of action and expand that private right of action.  The FCC does not have that right.

Do you have any other questions, Your Honor?

THE COURT:  Give me one moment here.  I don't know if you know what was Congress targeting in 2018 with this amendment.  Don't worry if you don't know.  I'm wondering what were they coming in to do.  What problem were they are addressing?

MS. MONTENEGRO:  I know that they did add the word "text messages" eleven times throughout the statute and then they added a whole section defining what text message means.  It was very purposeful.  They were looking at the statute and adding text message where they felt it was appropriate and added a whole definition section and they added it in eleven different sections of the statute, and they chose not to do it in (c)(5).

THE COURT:  Thank you.

MR. PARONICH:  Very briefly, Your Honor.  Just a point of clarification and an apology to my adversary.  I don't think I represented *Newity* as a circuit court decision.  What I had intended to represent and again

apologies if I misspoke, it was a district court decision. What I thought what was noteworthy the district court ruled while the circuit court of appeals was considering the same issue because it found it to be inconsistent with Seventh Circuit precedent and the last point I will make because I think the conversation here just has to do with the definition of call and the only circuit court of appeals to squarely consider the dictionary definition of call in the context of the TCPA with respect to text messages is the *Satterfield* case out of the Ninth Circuit.

I end my presentation by thanking my adversary, thanking the Court for their time and asking that the Court to consider that circuit court of appeals decision.

THE COURT: Before I end here, can I confirm -- I meant to do this earlier. But your Complaint includes an allegation so I'm looking at your Amended Complaint. It includes an allegation in paragraph 17, Defendant placed calls to telephone number such-and-such and 18 talks about the text messages. Is 17 the broader statement and 18 describes the types of calls?

MR. PARONICH: Yes, Your Honor. I agree with my adversary. This case is purely about text messages. When I reference calls, we meant it in the sense that because we view text messages as calls, but there are no

live voice calls to our understanding between the defendant and the plaintiff.

THE COURT:  Perfect.  Thank you.  Anything further?

MS. MONTENEGRO:  Nothing further, Your Honor.  I appreciate you taking the time to hear us in person.

THE COURT:  Thank you for taking the time to come in.  We'll stand adjourned.

(Adjourned: 3:20 p.m.)

COURT REPORTER'S TRANSCRIPT CERTIFICATE

I hereby certify that the within and foregoing is a true and correct transcript taken from the proceedings in the above-entitled matter.

/s/  Terri Fidanza

Terri Fidanza, RPR

Official Court Reporter