# EXHIBIT A

2026 WL 591842
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio, Eastern Division.

Kristi Stockdale, on behalf of herself and all others similarly situated, Plaintiff,

v.

Skymount Property Group, LLC, et al., Defendants.

CASE NO. 1:25 CV 1282
|
03/03/2026

**Attorneys and Law Firms**

Bryan A. Giribaldo, Pro Hac Vice, Alexander D. Kruzyk, Pardell, Kruzyk & Giribaldo, Austin, TX, for Plaintiff.

Matthew B. Peters, Keith Dye, Ryan D. Watstein, Watstein Terepka, Atlanta, GA, for Defendants.

PATRICIA A. GAUGHAN, United States District Judge

**Memorandum of Opinion and Order**

**INTRODUCTION**

 **\*1**  This matter is before the Court upon defendant Skymount Property Group, LLC and defendant Skymount Realty, LLC's Motion to Dismiss. (Doc. 9.) This is a Telephone Consumer Protection Act case. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

**FACTS**

For purposes of ruling on the pending motion to dismiss, all well-plead factual allegations in plaintiff's Complaint (Doc. 1) are presumed true. In 2017, plaintiff Kristi Stockdale ("Stockdale") registered her cellular telephone number with the National Do-Not-Call Registry ("DNC Registry"). Despite her number's continued presence on the DNC Registry, defendant Skymount Property Group, LLC and defendant Skymount Realty, LLC (together, "Defendants") began texting Stockdale's cellular telephone number in February 2022, through the present. In these text messages, Defendants solicited Stockdale to sell her house.

Stockdale filed her Complaint on June 20, 2025, alleging that Defendants' texts to her violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). In response, Defendants move to dismiss Stockdale's Complaint, contending that Stockdale has failed to state a cognizable claim under the TCPA, Section 227(c). Stockdale opposes the motion.[1]

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.

1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

**ANALYSIS**

**\*2** Defendants' motion to dismiss primarily turns on whether 47 U.S.C. § 227(c)(5)'s plain language limiting liability to "telephone call," includes text messages.[2] Courts around the country are split as to the outcome of this issue, in light of the Supreme Court's recent decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), which redefined how courts consider agency guidance when interpreting statutes.[3] Without any clear guidance from either the Sixth Circuit or the Supreme Court, this Court joins several others in holding that the term "telephone call" as used in Section 227(c)(5) of the TCPA does not encompass "text messages."

Congress enacted the TCPA in 1991. The TCPA imposes restrictions on telephone solicitations. Under Section 227(b)(1)(A), for example, it is prohibited "to make any call" using an "automatic telephone dialing system" to "any emergency telephone line." Under Section 227(b)(1)(B), it is prohibited "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." And under Section 227(c)(5), relevant here, the TCPA provides a private right of action for a person to seek damages if she has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." The TCPA authorizes the Federal Communications Commission ("FCC") to "prescribe regulations to implement methods and procedures for protecting the privacy rights" set forth in the TCPA. 47 U.S.C. § 227(c)(2). Relevant to Section 227(c)(5), the FCC promulgated 47 C.F.R. § 64.1200(c)(2) which states that "[n]o person or entity shall initiate any telephone solicitation to...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

The TCPA does not define "telephone call" as used in Section 227(c)(5). Accordingly, recent Supreme Court precedent dictates that this Court must independently—and without any special deference to an agency interpretation—determine the statute's meaning. *McLaughlin*, 606 U.S. at 155 ("District courts are not bound by the [FCC's] interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." (citing *Loper Bright*, 603 U.S. at 402)).[4]

**\*3** The Court starts with the plain meaning of "telephone call" at the time Congress enacted the TCPA. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). In 1990, Webster's Dictionary defined the noun "call" as "the act of calling on the telephone" and "telephone" as "an instrument for reproducing sounds at a distance..."one in which sound is converted into electrical impulses for transmission by wire." Merriam-Webster New Collegiate Dictionary (9th ed. 1990). *Loper Bright*, 603 U.S. at 400 ("[E]very statute's meaning is fixed at the time of enactment." (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (emphasis deleted))).[5] Under these definitions, "telephone call" could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance.[6]

**\*4**  Where, as here, the language of the statute is clear, the Court's analysis stops. *See United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) ("The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear."). The Court acknowledges, however, that its decision—as dictated by *Loper Bright* and *McLaughlin*—arguably stands in contrast to decades of FCC agency interpretations, court decisions, and even congressional intent. Such contradictory decisions are the natural consequence of the Supreme Court overruling *Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 865–66 (1984) and creating a gap between long-standing agency interpretations that Congress may have presumed to be valid and the plain text of statutes. But it is for Congress—not this Court— to fill those gaps in the wake of *Chevron*'s reversal.[7]

**CONCLUSION**

For all the aforementioned reasons, Defendants' Motion to Dismiss is GRANTED. IT IS SO ORDERED.

PATRICIA A. GAUGHAN

United States District Judge

Date: 3/3/26

**All Citations**

Slip Copy, 2026 WL 591842

Footnotes

1    Defendants timely filed a reply brief in support of their motion to dismiss. Stockdale filed a motion to strike this reply (Doc. 20), arguing it both failed to adhere to the Local Rules and raised new arguments. Because this Court did not rely on anything raised in Defendants' reply brief that was not also raised in the motion to dismiss or Stockdale's opposition brief, Plaintiff's Motion to Strike Defendant's[sic] Reply Brief in Support of Defendants' Motion to Dismiss is DENIED as moot.

2    Because this Court finds that Section 227(c)(5)'s plain language does not extend liability to text messages, this Court need not address Defendants' alternative argument that, even if text messages were actionable under Section 227(c)(5), Defendants' text messages were not "telephone solicitations."

3    *Compare, e.g.*, *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 889 (C.D. Ill. 2025) ("[U]nder a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."), *with Mujahid v. Newity*, 2025 WL 3140725, at \*2 (N.D. Ill. Nov. 10, 2025) ("The Court finds that the phrase 'telephone call,' as used in § 227(c), encompasses 'text messages'....[I]nterpreting § 227(c) to include text messages is supported by the statute's plain language."). Since Defendants' Motion to Dismiss became ripe in the beginning of December, both parties have provided this Court with several supplemental cases supporting their respective interpretations. (*See* Docs. 22-27.)

4    Plaintiff suggests that, even after *Loper Bright*, courts can defer to agency interpretations of statutes so long as the interpretation is "within a zone of reasonableness." (Doc. 16, at 15.) Plaintiff is misguided. The two cases she cites asked whether specific, discrete agency actions violated the Administrative Procedure Act—a completely different issue than the issue before this Court. (*Id.* (citing *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497, 1511 (2025) (reviewing Surface Transportation Board's final order), further citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (reviewing decision of FCC)).)

5    Plaintiff cites several courts that have found that the plain meaning of "telephone call" includes text messages. This Court respectfully disagrees with the textual analyses undertaken by these courts. First, several based their analyses on a dictionary definition of "call" from 2002—or later. *E.g.*, *Mujahid*, 2025 WL 3140725, at \*2 (referencing definition from 2002); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at \*2 (N.D. Cal. Oct. 7, 2025) (referencing definition from 2024). Second, several others relied on definitions of "call" contemporaneous with the TCPA's enactment but failed to consider the contemporaneous definition of the modifying "telephone."

*E.g.*, *Wilson v. Better Mortgage Corp.*, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026).

While one district court in the Southern District of Texas did address contemporaneous definitions of both "call" and "telephone," this Court is not convinced by its further analysis that found those definitions include text messages. *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930, at *4–5 (S.D. Tex. Jan. 26, 2026). After noting the appropriate definitions, the court based its analysis on a comparison of "telephone" in 1991 with "cell phone" today. The court reasoned that because the modern cell phone includes the capabilities of a telephone in 1991—reproducing sound—then a modern cell phone is essentially the equivalent of a telephone in 1991 and any communication by a cell phone must be considered a "call" under the TCPA. *Id.* at *5 ("[A] telephone in 1991 was an instrument 'for producing sounds at a distance.' So is a telephone today. But that instrument may also send messages via 'calls.' Thus, to make a 'telephone call,' for purposes of § 227(c)(5), is to 'to get or try to get into communication' with an 'instrument for producing sounds at a distance.' A text message therefore falls reasonably within the literal language of the statute.").

While a modern cell phone has capabilities that bring the device within the 1991 definition of "telephone," that is not the issue before this Court. The question here is whether "call" as modified by "telephone" in 1991 can include text messages. Just because later technology may, by definition, encapsulate earlier technology, it does not follow that the capabilities of the later technology are the equivalent of the capabilities of the earlier technology.

In 1991, the definition of telephone was limited to voice capabilities. That is not to say that later technology (*e.g.*, cell phones) cannot fit the definition of telephone just because they have additional capabilities, but the only capability possibly covered by definition of "telephone call" in 1991 was reproducing sound. Accordingly, capabilities of modern cell phones beyond reproducing sounds cannot be covered by the plain meaning of "telephone call" in 1991. To hold otherwise would suggest that any communication from a modern cell phone is a "telephone call" under the TCPA, which might include messages sent through Internet applications downloaded onto a cell phone. This broad interpretation of "telephone call" is not supported by the term's plain meaning as defined in 1991.

6    Defendants, and some other courts, contend that because text messages did not exist when the TCPA was enacted, the TCPA's plain language could not encompass text messages. This is misguided. Congress can, and often does, enact statutes broad enough to cover future factual situations unimaginable at the time of enactment. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.' " (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985))). The question before this Court is not whether the enacting Congress intended to cover some specific technology that did not yet exist, but whether the language of the statute it enacted does, in fact, cover this specific later- developed technology. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) (finding that courts "must interpret what Congress wrote," even in the face of changing technology).

7    Even if this Court were to give deference to the FCC's regulations, several of Plaintiff's arguments still lack merit. For instance, Plaintiff cites to 47 C.F.R. § 64.1200(e), claiming it somehow means to define "telephone call" in Section 227(c)(5) of the TCPA as including text messages. Section 64.1200(e) makes Sections 64.1200(c)–(d) "applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." By its own plain language, Section 64.1200(e) only makes the regulations promulgated under Section 227(c)(5) applicable to persons or entities making telemarketing text messages to wireless telephone numbers. It says nothing as to whether the person receiving a text message from such an entity has a private right of action under Section 227(c)(5) of the TCPA for text messages.

Further, Plaintiff argues that Congress implicitly ratified the FCC's interpretation of "call" by not negating that interpretation in any of its four amendments to the TCPA since 2003. But Congress's silence in its amendments goes both ways. On one hand, as Plaintiff points out, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). But on the other hand, as Defendants point out, Congress knows how to include text messages when it wants to, like it did in a different section of the TCPA through a 2018 amendment. *See* 47 U.S.C § 227(e)(1); *see also Dept. of Homeland Sec. v. MacLean*, 547 U.S. 383, 393–94 (2015). But even assuming Plaintiff is correct, that Congress intended for Section 227(b)(5) to cover text messages, this Court is bound by the clear, plain language of the statute. If the plain language is not giving effect to Congress's intent, it is for Congress to correct—not the courts.

---

Footer:
**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.    4