## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>*v.*<br><br>EASY SPIRIT, LLC,<br><br>           Defendant. | Case No.: 25-cv-00112-SFR<br><br>**ORAL ARGUMENT REQUESTED**<br><br>April 14, 2026 |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CERTIFY THIS COURT'S ORDER DATED MARCH 31, 2026 (ECF 87) FOR <u>INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)</u>

KASOWITZ LLP
By: */s/ Christine A. Montenegro*
Christine A. Montenegro (ct30008)
Lea Dartevelle Erhel (pro hac vice pending)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
E-mail: cmontenegro@kasowitz.com
       ldartevelle@kasowitz.com

FINN DIXON & HERLING LLP
By: */s/ Tony Miodonka*
Tony Miodonka (ct28262)
Six Landmark Square
Stamford, CT 06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: tmiodonka@fdh.com

*Attorneys for Defendant Easy Spirit, LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

LEGAL STANDARD.................................................................................................... 3

ARGUMENT ................................................................................................................. 4

**I.**   ALL FACTORS UNDER 28 U.S.C. § 1292(b) ARE SATISFIED...................................... 4

    A.   The Order Involves Controlling Questions of Law .............................................. 4

    B.   There Are Substantial Grounds for Difference of Opinion ................................. 5

    C.   An Immediate Appeal Will Materially Advance the Termination of This Litigation ...... 12

**II.**   A STAY OF THE PROCEEDINGS IS WARRANTED IN LIGHT OF THE NATURE OF THE INTERLOCUTORY APPEAL .................................................................... 14

CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APCC Servs., Inc. v. Sprint Commc'ns. Co.*,
297 F. Supp. 2d 90 (D.D.C. 2003) ........................................................................................5

*Bullard v. Blue Hills Bank*,
575 U.S. 496 (2015) .............................................................................................................3

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ..........................................................................10, 12

*Dilanyan v. Hugo Boss Fashions, Inc.*,
No. 2:25-CV-05093, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025) ...........................1, 3, 9, 15

*United States ex rel. Drake v. NSI, Inc.*,
736 F. Supp. 2d 489 (D. Conn. 2010) ...................................................................................5

*In re Duplan Corp.*,
591 F.2d 139 (2d Cir. 1978) ...............................................................................................12

*Golan v. FreeEats.com, Inc.*,
930 F.3d 950 (8th Cir. 2019) .............................................................................................13

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ......................................................................15

*James v. Smarter Contact, Inc.*,
No. 8:25-cv-1657, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) .............................7, 8, 10, 12

*Jones v. Blackstone Med. Servs.*,
LLC, 792 F. Supp. 3d 894 (C.D. Ill. 2025) ........................................................................9, 10

*Jones v. Midland Funding, LLC*,
No. 3:08-CV-802, 2012 WL 1204716 (D. Conn. Apr. 11, 2012) ...........................................13

*Kinkead v. Humana, Inc.*,
No. 3:15-CV-01637, 2016 WL 9453808 (D. Conn. Oct. 13, 2016) ..................................3, 5, 6

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990) ...............................................................................................3, 5

*Lockhart v. United States*,
577 U.S. 347 (2016) (Kagan, J., dissenting) ........................................................................11

*Loper Bright Enterprises v. Raimondo*,
　　603 U.S. 369 (2024)..................................................................................................1, 8

*McGonigle v. Pure Green Franchise Corp.*,
　　No. 25-61164-CIV, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026)..............................9

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
　　606 U.S. 146 (2025)..............................................................................................1, 2, 8

*U.S. ex rel. Quartararo v. Cath. Health System of Long Island, Inc.*,
　　521 F. Supp. 3d 265 (E.D.N.Y. 2021) ...................................................................4

*Radvansky v. 1-800-FLOWERS.COM, INC.*,
　　No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .......................9, 12

*Richards v. Fashion Nova, LLC*,
　　2026 WL 847568 (S.D. Ind. 2026) .........................................................................9

*Richards v. Shein Distribution Corp.*,
　　2026 WL 847584 (S.D. Ind. 2026) .........................................................................9

*Rothstein v. GMAC Mortgage, LLC*,
　　No. 12 Civ. 3412, 2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014)..............................12

*Sayed v. Naturopathica Holistic Health, Inc.*,
　　No. 8:25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)...........................8

*Sec. & Exch. Comm'n v. Coinbase, Inc.*,
　　761 F. Supp. 3d 702 (S.D.N.Y. 2025)......................................................................5

*Silva v. Schmidt Baking Distrib., LLC*,
　　No. 3:23-CV-01695, 2024 WL 3566168 (D. Conn. July 29, 2024) .........................4

*Skylon Corp. v. Guilford Mills, Inc.*,
　　901 F. Supp. 711 (S.D.N.Y. 1995) ...........................................................................6

*Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*,
　　101 F.4th 176 (2d Cir. 2024) ...................................................................................10

*Steidinger v. Blackstone Med. Servs.*,
　　No. 25-2398 (7th Cir.) ....................................................................................1, 4, 10

*Stockdale v. Skymount Prop. Group, LLC*,
　　No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio, 2026) ......................................10

*Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*,
　　150 F. Supp. 2d 360 (D. Conn. 2001)......................................................................14

*United States v. Dish Network, LLC,*
  954 F.3d 970 (7th Cir. 2020) .......................................................................................13

*Yeend v. Akima Global Servs., LLC,*
  2025 WL 1549046 (N.D.N.Y. 2025) ...............................................................................13

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................... *passim*

47 U.S.C. § 227(c)(5)................................................................................................... *passim*

47 U.S.C. § 227(e)(8)(C) .........................................................................................................9

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 Green
  Bag 2d 419, 427 (2012) (noting that the 1989 OED is an authoritative source) .......................7

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
  Texts* 86 (2012) ...........................................................................................................7

*Oxford English Dictionary* (2d ed. 1989) .......................................................................6

*Oxford English Dictionary Online* (2026) ......................................................................7

*Webster's Ninth New Collegiate Dictionary* (1990).........................................................6

**PRELIMINARY STATEMENT**

Defendant Easy Spirit[1] moves this Court, under 28 U.S.C. § 1292(b), for permission to take an interlocutory appeal from the March 31, 2026, order (ECF 87) denying Defendant's motion to dismiss (the "Order"). The motion raised two novel threshold legal questions: whether the private right of action under 47 U.S.C. § 227(c)(5) extends to text messages, and whether it extends to cellular phone subscribers. The Court ruled against Defendant, finding § 227(c)(5) extends to text message and cellular phone subscribers. Order at 7 and fn. 5. This Court expressly acknowledged that the question of whether text messages fall within the term 'telephone call' "has split the federal courts," and "[n]either party directs [the Court] to binding Supreme Court or Second Circuit precedent." Order at 8.

That split is wide and growing, with courts now divided on whether § 227(c)(5) encompasses text messages and cellular phone lines. Since *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025), following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024)—held that district courts are no longer bound by statutory interpretations rendered by the Federal Communications Commission ("FCC"), district courts in Illinois, Ohio, Georgia, Florida, California, and Indiana have all ruled § 227(c)(5) does not extend to text messages. Indeed, the U.S. District Court for the Central District of California in *Dilanyan v. Hugo Boss Fashions, Inc.,* No. 2:25-CV-05093, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025) has already certified this very same question—whether § 227(c)(5) extends to text messages—for interlocutory appeal, and the Seventh Circuit has oral argument on this issue scheduled for May 2026, *see Steidinger v. Blackstone Med. Servs.*, No. 25-2398 (7th Cir.).

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Dismiss ("Motion") (ECF 27).

Meanwhile, TCPA filings have quadrupled over the past two years and conflicting outcomes are already proliferating.

This case satisfies all three requirements of § 1292(b). *First*, the case presents controlling questions of law—whether § 227(c)(5) extends to text messages and cellular subscribers—the resolution of which would terminate this action. *Second*, this case involves "substantial grounds for difference of opinion," as this Court itself recognized, these purely legal issues have divided courts nationwide in the wake of *McLaughlin*, and there is no controlling Second Circuit authority. Order at fn. 2, and fn. 3. *Third*, an immediate appeal will materially advance the ultimate termination of the litigation because reversal would eliminate the case entirely. Thus, the parties would avoid incurring substantial costs associated with class discovery and class certification and unnecessarily draining judicial resources. And, early appellate resolution will provide much needed guidance from the Second Circuit and prevent conflicting decisions on these controlling questions of law as Plaintiff alone—who has filed eighty-five substantially similar cases nationwide since 2024—has eight similar TCPA cases pending in the Second Circuit.[2]

Defendant further respectfully requests a stay pending resolution of the interlocutory appeal. The threshold question of whether the TCPA's private right of action applies at all could dispose of this case entirely, and proceeding with discovery, standing, and class certification before that issue is resolved would impose unnecessary burdens on the parties and the Court. Easy Spirit has put into place a litigation hold and is preserving any and all records related to this action and Plaintiff's records accordingly. *See* ECF 23, Declaration of Matthew Burris in

---

[2] *See, e.g.,* cases pending in federal courts in New York, Nos. 1:2026cv00009, 1:2025cv01075, 1:2025cv03479, 1:2025cv05503, 1:2025cv07246, and 1:2025cv06357; and in the District of Connecticut, Nos. 3:2025cv01417 and 3:2025cv00112.

Support of Defendant's Motion to Stay.  Plaintiff, who is a serial litigator prosecuting more than 85 similar cases nationwide, will suffer no meaningful prejudice from a brief stay.

Defendant respectfully requests certification and a stay pending appeal.

## LEGAL STANDARD

The Court has the authority to certify the Order for interlocutory appeal because, as detailed below, each of the three criteria set forth in § 1292(b) is satisfied:  (1) the Order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order will materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. § 1292(b).  *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015); *Klinghoffer v.  S.N.C.  Achille Lauro*, 921 F.2d 21, 24–25 (2d Cir. 1990) (granting interlocutory appeal where resolution of the question of law would terminate the action); *Kinkead v. Humana, Inc.*, No. 3:15-CV-01637, 2016 WL 9453808, at *2 (D. Conn. Oct. 13, 2016) (granting interlocutory appeal to novel question where district courts diverged nationally and there was no guidance from the Second Circuit).

The Order presents controlling questions of pure statutory interpretation whose reversal would end this litigation entirely, and the parties' combined eighteen notices of supplemental authority, each capturing decisions from district courts that have "grappled" with the issues presented, reflect the breadth of the nationwide conflict on these novel issues.  Order at 3. Indeed, the *Dilanyan* Court—confronting the identical question under § 1292(b)—has already concluded that all three criteria are met to warrant an interlocutory appeal, after finding that the meaning of "telephone call" presents a controlling question of law that would determine the outcome of the case, that courts have reached conflicting conclusions post-*Loper Bright*, and that immediate appellate review would conserve resources by potentially disposing of the action entirely—the same showing made here.  2025 WL 3549868, at *3–5.  That conflict is now

reaching the appellate level, with the Seventh Circuit having accepted review of the same question in *Steidinger*, No. 25-2398 (7th Cir.), with oral argument scheduled for May 2026.  A California district court has already acted; the Seventh Circuit is poised to rule.  Appellate guidance from the Second Circuit is both warranted and urgent.

## ARGUMENT

## I.     ALL FACTORS UNDER 28 U.S.C. § 1292(b) ARE SATISFIED

The Order presents two controlling legal questions:  whether § 227(c)(5)'s private right of action extends to text messages, and whether a cellular phone subscriber qualifies as a "residential telephone subscriber" to bring a private right of action under § 227(c)(5), both of which are the subject of substantial and growing disagreement among the federal courts.

### A.     The Order Involves Controlling Questions of Law

A controlling question of law must be a "pure" question "that the reviewing court could decide quickly and cleanly without having to study the record."  *U.S. ex rel. Quartararo v. Cath. Health System of Long Island, Inc.,* 521 F. Supp. 3d 265, 275 (E.D.N.Y. 2021) (quoting *Fairbank Recons. Corp. v. Greater Omaha Packing Co., Inc.*, No. 13-CV-907S, 2020 WL 7427025, at *4 (W.D.N.Y. Dec. 18, 2020)).  Furthermore, an order involves a "controlling question of law" if reversal on that question would "result in dismissal" or otherwise "significantly affect the conduct of the action."  *Silva v. Schmidt Baking Distrib., LLC*, No. 3:23-CV-01695, 2024 WL 3566168, at *2 (D. Conn. July 29, 2024).  Both aspects are readily satisfied here.

Both questions here are pure questions of statutory interpretation that the Second Circuit can resolve without reference to the factual record.  Whether the term "telephone call" in § 227(c)(5) encompasses text messages, and whether Congress intended cellular subscribers to qualify as "residential telephone subscriber" who can bring a private right of action under

4

§ 227(c)(5), are purely legal questions involving the statutory interpretation of the TCPA.

Because this Court recognized that Wilson's complaint asserts a single cause of action under §

227(c) predicated on text messages sent to a cellular number (Order at 2), reversal on either

question would terminate the action. *Klinghoffer*, 921 F.2d at 24 ("it is clear that a question of

law is 'controlling' if reversal of the district court's order would terminate the action.") (citations

omitted).

B.      **There Are Substantial Grounds for Difference of Opinion**

When determining whether there is "substantial ground for difference of opinion," the

Court must consider whether "(1) there is conflicting authority on an issue or (2) the case is

particularly difficult and of first impression within this Circuit." *United States ex rel. Drake v.

NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010). Both prongs are independently satisfied

here, and the Court itself has said so: in denying the motion to dismiss, the Court explicitly

acknowledged that "this issue has split the federal courts." Order at 8. That acknowledgment

alone is sufficient to establish substantial ground for difference of opinion. When "district courts

elsewhere across the country have reached conflicting conclusions" on the same question, the

second prong of the § 1292(b) framework is established. *See Kinkead*, 2016 WL 9453808, at *2-

3 (substantial grounds of opinion exist "given the emerging divergence among district courts, the

lack of authoritative guidance from the Second Circuit, and the apparent novelty of the

question."); *APCC Servs., Inc. v. Sprint Commc'ns. Co.*, 297 F. Supp. 2d 90, 97-98 (D.D.C.

2003); *see also Sec. & Exch. Comm'n v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 717 (S.D.N.Y.

2025) ("In determining whether there is conflicting authority on an issue, the question is, rather

simply, whether there are 'differing rulings by district court judges'…on the issue") (citing *Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017)).  That standard is met many times over here.[3]

The breadth and consistency of authority from courts in Illinois, Ohio, Georgia, Florida, California, and Indiana ruling in Defendant's favor, along with decisions in other jurisdictions reaching the opposite conclusion, warrants certification.  The Court's own analysis underscores the point.  In denying the motion to dismiss, the Court agreed with the reasoning of courts holding that "Congress's decision to use a different term"—*i.e.* "telephone solicitations" which is defined as "a telephone call or message"—"in a neighboring provision only undermines Plaintiff's position" because "it shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" Order at fn. 5 (quoting *Radvansky*, 2026 WL 810929 at *2 (quoting *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025)).  This Court concluded that "the plain meaning of telephone call does include text message," *Id.* at 12, but also explicitly recognized that "this issue has split the federal courts."  Order at 8.  A court that acknowledges a federal split, finds the opposing textual reasoning persuasive, yet still reaches a different result, illustrates that this is precisely the kind of difficult, close question § 1292(b) certification is designed to address.

Although this Court cited *Webster's Ninth New Collegiate Dictionary* (1990) for the proposition that the ordinary meaning of "call" in 1991 was "to get or try to get into communication by telephone" and thus could encompass text messages (*see* Order at 9–10), other dictionaries from that time demonstrate that "telephone call" is an inherently vocal concept. *See, e.g.*, *The Oxford English Dictionary* (2d ed. 1989) (defining "telephone" as "[a]n apparatus

---

[3] This requirement may be fulfilled even if this Court does not agree with the results reached in the conflicting decisions; it need only agree that a "substantial" ground for difference of opinion exists.  S*ee Skylon Corp. v. Guilford Mills, Inc.*, 901 F.  Supp. 711, 718 (S.D.N.Y. 1995).

for reproducing sound, esp. that of the voice, at a great distance, by means of electricity," and setting forth multiple definitions for "call" involving one's "voice") [4]; *James v. Smarter Contact, Inc.*, No. 8:25-cv-1657, 2026 WL 879244, at *3–4 (M.D. Fla. Mar. 31, 2026) (collecting dictionaries to demonstrate that the ordinary meaning of "telephone call" in 1991 was to "communicat[e] with someone by reproducing sounds at a distance"). Nor is this a circumstance where Congress employed a broad term that encompasses after-arising and unforeseen technologies. Statutes from the 1800s that employ the term "goods" surely cover microwaves, and no one doubts that a statute restricting the use of a "dangerous weapon" will include a death ray when it is invented. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 86 (2012) (addressing the fixed-meaning canon). But a "telephone call" is different in kind: its meaning, in 1991 and today, is fixed on *vocal* communication, thus excluding a *written* communication such as a text message. *See, e.g.*, *The Oxford English Dictionary Online* (2026) (noting, in definition of "telephone": "In recent use the word *telephone* (unlike *phone*) is typically used to refer to a landline telephone rather than a mobile phone"; and defining "telephone call" as "an instance of contacting someone by telephone; a telephone conversation"). Courts applying this analysis have therefore concluded that § 227(c)(5) does not extend to text messages. *See, e.g., James*, 2026 WL 879244 at *3-4 (undertaking a detailed textual and statutory analysis, including examination of contemporaneous dictionary definitions of "telephone call" and holding that § 227(c)(5) does not provide a private right of action for text messages). At the very least, reasonable minds can differ on the proper statutory interpretation, warranting § 1292(b) certification.

---

[4] *See* Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 Green Bag 2d 419, 427 (2012) (noting that the 1989 OED is an authoritative source).

Since *Loper Bright* and *McLaughlin* freed courts to interpret the statute independently (Order at 9), a clear and deepening conflict has emerged among district courts. The parties filed a combined eighteen notices of supplemental authority reflecting that division. Order at 3. This Court likewise acknowledged the absence of controlling authority, noting that "Easy Spirit cites no binding precedent….nor has Wilson….[n]either party directs me to binding Supreme Court or Second Circuit precedent[.]" Order at 6–8. Against that backdrop, multiple district courts, interpreting the same statutory text with fresh eyes, have unanimously found—contrary to this Court's ruling—that § 227(c)(5) does not extend to text messages:

- The Middle District of Florida dismissed § 227(c)(5) claims, holding that the ordinary public meaning of "telephone call" in 1991 required transmission of sound at a distance, a definition that categorically excludes text messages. The court further reasoned that "'call' is used as a noun'" in Section 227(c)(5) and "[the Court's] conclusion remains even if one improperly used definitions of the verb form of 'call'; 'to communicate or try to communicate by telephone." The Court explained that courts have "compound[ed] the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991. . . [E]ven using the definition of 'call' as a verb, a text message is not communicating or attempting to communicate with someone by reproducing sounds at a distance. . . Therefore, a text message is not included within the meaning of 'telephone call'[.] *James,* 2026 WL 879244, at *3-4. In another case, the Middle District of Florida similarly found that "in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication," and that Congress's decision to use "text message" elsewhere in the TCPA "confirms Congress understood the pertinent distinction." *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-

8

00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025); *see also McGonigle v. Pure Green Franchise Corp.*, No. 25-61164-CIV, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026).

- The Central District of California concluded that "Congress updated § 227(e) to include text messages in addition to calls, but has not similarly amended § 227(c)(5), suggests that Congress views a text message as a distinct form of communication to which § 227(c)(5)'s private right of action does not apply." *Dilanyan*, 2025 WL 3549868, at *2.

- The Central District of Illinois held that "Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones v. Blackstone Med. Servs.,* LLC, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025).

- The Northern District of Georgia found that because "Congress has since amended the TCPA and specifically uses the term 'text message' in a neighboring provision," *see* 47 U.S.C. § 227(e)(8)(C), "when Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Radvansky,* 2026 WL 810929 at 3; *see also Radvansky v. 1-800-FLOWERS.COM, INC.*, No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026).

- The Southern District of Indiana held that because text messaging did not exist when the TCPA was enacted in 1991, "telephone call" would not have included text messages, and "every statute's meaning is fixed at the time of enactment." *Richards v. Shein Distribution Corp.*, 2026 WL 847584 (S.D. Ind. 2026); *see also Richards v. Fashion Nova, LLC*, 2026 WL 847568 (S.D. Ind. 2026).

9

- The Northern District of Florida held that "no ordinary person would think of a text message as a 'telephone call'" in the context of § 227(c). *Davis*, 797 F. Supp. 3d at 1274.

- The Northern District of Ohio "join[ed] several others in holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages,'" finding that "Congress knows how to include text messages when it wants to, like it did in a different section of the TCPA through a 2018 amendment. *Stockdale v. Skymount Prop. Group, LLC*, No. 1:25 CV 1282, 2026 WL 591842, at *4 (N.D. Ohio, 2026)

This Court's ruling also stands in tension with the Second Circuit's own reasoning in *Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, 101 F.4th 176, 179 (2d Cir. 2024). Just as the *James* court found that "telephone call" requires transmission of sound at a distance, a definition that categorically excludes text messages, *James* 2026 WL 879244 at *3, the Second Circuit in *Soliman* declined to read § 227(b)'s reference to "artificial or prerecorded voice" as covering texts, and noted that § 227(d)(3) refers to calls, not texts, since "one cannot hang up on a text." 101 F. 4th at 187. The common thread is plain: a "telephone call" under the TCPA is an inherently voice-based concept, and the Second Circuit's own analysis reflects that understanding. Though *Soliman* addressed § 227(b), its reasoning applies with equal force to § 227(c)'s use of "telephone calls" and is in tension with this Court's conclusion that the plain meaning of "telephone call" encompasses a text message.

The conflict has now reached the appellate level, most consequentially in *Steidinger*, No. 25-2398 (7th Cir.). That case arises from the Central District of Illinois's ruling in *Jones,* 792 F. Supp. 3d 894, which held that § 227(c)(5)'s private right of action does not extend to text messages, the same question presented here. The Seventh Circuit has scheduled oral argument

10

for May 2026, making it the first Court of Appeals to squarely confront the post-*McLaughlin* statutory interpretation question.  Its decision will carry significant weight.  If the Seventh Circuit affirms and holds that text messages fall outside § 227(c)(5)'s private right of action, that ruling will deepen the existing national divide and further underscore the need for the Second Circuit to provide its own definitive guidance.  If it reverses, it will create a direct circuit-level conflict with the weight of district court authority that has gone the other way.  Either outcome reinforces the case for certification here: the Second Circuit's guidance is urgently needed on a question already reshaping TCPA litigation nationwide, particularly given the volume of cases pending within this Circuit.

Similarly, the same shift away from agency deference and resulting conflicts in statutory interpretation have produced divergent rulings on whether the private right of action under § 227(c)(5) extends to cellular phone subscribers, as opposed to the "residential telephone subscribers" referenced in the statute. This Court itself noted that other courts have held that cellular subscribers are not "residential telephone subscribers" under the TCPA. (Order at fn. 2 (listing cases)).  Indeed, under the nearest-reasonable-referent canon, "residential" modifies "telephone," not "subscriber"—contrary to this Court's conclusion. *See, e.g.*, *Lockhart v. United States*, 577 U.S. 347, 364 (2016) (Kagan, J., dissenting) ("When the syntax involves something other than … a parallel series of nouns or verbs, the modifier 'normally applies only to the nearest reasonable referent.'") (citation modified).

The absence of controlling appellate authority, coupled with conflicting district court decisions, confirms that substantial grounds for difference of opinion exist.  Courts are sharply divided on the meaning of "telephone call" in § 227(c)(5), with some, including this one, adopting broader definition that encompass text messages, and others concluding that the term

11

does not extend that so far.  *See e.g., James*, 2026 WL 879244 (undertaking a detailed textual and dictionary-based analysis and concluding that § 227(c)(5) does not extend to text messages); *Davis*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (noting that "[n]o normal person refers to a text message… as a 'call'"); *Radvansky,* 2026 WL 456919 at *3 ("The three district courts in this Circuit that have addressed the issue have each concluded that the phrase "telephone call" in § 227(c)(5) does not include text messages").  This divergence in textual analysis confirms that reasonable jurists can reach differing conclusions on the same statutory language, underscoring a substantial ground for difference of opinion.

### C.   An Immediate Appeal Will Materially Advance the Termination of This Litigation

Immediate appeal may materially advance termination because reversal would eliminate the case entirely, satisfying "a critical requirement" identified by the Second Circuit.  I*n re Duplan Corp.*, 591 F.2d 139, 148 (2d Cir. 1978).  A ruling by the Second Circuit that text messages are not covered by § 227(c)(5), or that Wilson's cellular number does not qualify as a "residential" subscriber, would require dismissal of the complaint.  *See Rothstein v. GMAC Mortgage, LLC*, No. 12 Civ. 3412, 2014 WL 1329132, at *3 (S.D.N.Y.  Apr. 3, 2014) (certifying order where "reversal on the issue sought to be appealed would result in dismissal of the litigation" and "some of this protracted litigation might be avoided by an immediate appeal").

The stakes of proceeding without appellate guidance are particularly acute in the TCPA context.  Unlike most civil litigation, TCPA class actions virtually never proceed to trial.  The economics of the statute, which imposes statutory damages of $500 to $1,500 per violation, aggregated across potentially millions of class members, create settlement pressure that is largely disconnected from the merits.  A defendant facing even a facially questionable TCPA class action is confronted with theoretical aggregate exposure that can reach into the hundreds of

millions or billions of dollars, rendering the cost-benefit calculus of continued litigation untenable regardless of the strength of its legal defenses.  The result is that resolution in these cases is driven not by adjudication of the underlying legal questions, but by the crushing weight of potential liability.  Absent interlocutory review, this case will follow that same trajectory: the parties will be required to engage in burdensome discovery and class certification practice, with settlement pressure mounting at every stage, all before the controlling legal question has been resolved.  *See Jones v. Midland Funding, LLC*, No. 3:08-CV-802, 2012 WL 1204716, at \*5 (D. Conn. Apr. 11, 2012) (certifying appeal because if granted "class action proceedings will be unnecessary and judgment will enter in defendants' favor, saving both sides of this case significant time and expense"); *see also Yeend v. Akima Global Servs., LLC*, 2025 WL 1549046 (N.D.N.Y. 2025) (certifying a § 1292(b) appeal, expressly citing the cost and judicial resource burden that would result from proceeding with a class action without first resolving a controlling legal question).

That dynamic is not merely inefficient; courts have increasingly recognized it as constitutionally problematic.  Over the past several years, federal courts have begun to invalidate or substantially reduce TCPA damages awards on due process grounds, finding that the statute's mandatory per-violation penalties, when aggregated across a class, produce awards so disproportionate to any actual harm as to be constitutionally infirm.  In *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019), the Eighth Circuit held that "the absolute amount of the award, not just the amount per violation, is relevant to whether the award is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *Id.* at 963 (quoting *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)).  The Seventh Circuit reached a similar conclusion in *United States v. Dish Network, LLC*, 954 F.3d

13

970 (7th Cir. 2020), reducing potential TCPA damages from hundreds of billions of dollars to $280 million (approximately 20% of the defendant's annual profits) on the ground that a larger award would be oppressive and wholly disproportionate to the offense. These decisions reflect a growing judicial recognition that TCPA statutory penalties, as applied to text messages and cellular outreach at class scale, can threaten the financial survival of defendant companies while bearing no rational relationship to actual consumer harm.

That constitutional concern is directly implicated here. Wilson alone has filed over 85 substantially similar cases since 2024, at least 8 of which are pending within the Second Circuit. The aggregate exposure across those cases, if § 227(c)(5) is ultimately held not to extend to text messages or cellular subscribers, will have been entirely unwarranted, yet companies will have been forced to settle under the weight of that exposure before the legal question was ever resolved. Interlocutory review would break that cycle. A definitive Second Circuit ruling on the threshold statutory questions would ensure consistent outcomes across all pending matters, relieve defendants of settlement pressure premised on legally uncertain liability, and conserve substantial judicial resources. *See Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 368–69 (D. Conn. 2001) (certifying for immediate appeal an issue that was "likely a dispositive issue not only in this case, but also in [a similar case]," finding that allowing an immediate appeal was "a more efficient use of judicial resources than undertaking numerous trials before the question...can be taken up on appeal from a final judgment.").

## II.    A STAY OF THE PROCEEDINGS IS WARRANTED IN LIGHT OF THE NATURE OF THE INTERLOCUTORY APPEAL

Given the threshold question of whether the TCPA's private right of action applies at all to this putative class action brought by this serial Plaintiff is squarely at issue here and in other pending lawsuits, Defendant respectfully requests that the Court stay proceedings while the

14

Second Circuit considers the interlocutory appeal requested herein.  At least one other court confronted with this issue has elected to do so to guard against needless waste of judicial resources and unnecessary expenditure of time and money by the parties in the event the controlling question of law is resolved in Defendant's favor.  *See Dilanyan*, 2025 WL 3549868 at *2-5 (staying case pending interlocutory appeal on the question of whether text messages fall within Section 227(c)(5), finding that "allowing the litigation to proceed when the interlocutory appeal is pending could waste time and resources, as the appeal may result in the dismissal of the action, rendering such efforts moot.").

A stay is particularly appropriate here given that the case remains in its earliest stages, with no discovery having occurred, the record is preserved, and no conferences regarding bifurcation or class certification having been held.  Staying proceedings until the Court of Appeals resolves the appeal is in the interest of both the parties and judicial economy, as a ruling in Defendant's favor on either issue presented would require dismissal of this action.  A stay would cause Plaintiff little, if any, prejudice.  Upon notice of the instant action, Easy Spirit put into place a litigation hold and is preserving any and all records related to this action and Plaintiff's records accordingly.  *See* ECF 23, Declaration of Matthew Burris in Support of Defendant's Motion to Stay.  The only conceivable harm is the minor inconvenience of waiting somewhat longer to pursue one of his 85 pending claims, particularly where no discovery requests have yet been served and any proceedings would in any event begin with threshold determinations regarding Plaintiff's standing.  *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (plaintiff would not be prejudiced where no discovery requests had yet been served and commencement of discovery would be delayed for only a few months).

By contrast, if proceedings continue, it will be substantially costly to both parties, and this Court will be required to manage discovery disputes, adjudicate Plaintiff's standing, address the appropriateness of conditional certification, and define the scope of the putative class, all before the controlling threshold legal questions have been resolved.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant and certify its Order dated March 31, 2026 (ECF 87) for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: April 14, 2026

Respectfully submitted,

KASOWITZ LLP
By: */s/ Christine A. Montenegro*
Christine A. Montenegro (ct30008)
Lea Dartevelle Erhel (pro hac vice pending)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
E-mail: cmontenegro@kasowitz.com
         ldartevelle@kasowitz.com

FINN DIXON & HERLING LLP
By: */s/ Tony Miodonka*
Tony Miodonka (ct28262)
Six Landmark Square
Stamford, CT 06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: tmiodonka@fdh.com

*Attorneys for Defendant Easy Spirit, LLC*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2026, a copy of the foregoing was filed through the Court's electronic filing system.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

KASOWITZ LLP

By: /s/ Christine A. Montenegro
Christine A. Montenegro (ct30008)
Lea Dartevelle Erhel (pro hac vice pending)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
E-mail: cmontenegro@kasowitz.com
        ldartevelle@kasowitz.com

17