**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> *v.* <br><br> EASY SPIRIT, LLC <br><br> *Defendant.* | Case No. 25-cv-00112 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

**INTRODUCTION**

Defendant asks this Court to certify its March 31, 2026 Order for interlocutory appeal under 28 U.S.C. § 1292(b). That request should be denied. Section 1292(b) is a "narrow exception" to the final judgment rule, reserved for "exceptional" circumstances—not for routine disagreement with a district court's statutory interpretation.

This case presents nothing exceptional. The Court issued a thorough, well-reasoned decision after extensive briefing, supplemental submissions, and oral argument, applying ordinary principles of statutory interpretation to the facts alleged in the First Amended Complaint. Defendant's motion seeks to relitigate issues the Court has already carefully considered and resolved.

Nor does Defendant demonstrate a substantial ground for difference of opinion. The Court did not rely on unsettled law or conflicting authority within this Circuit. Instead, it conducted an independent analysis grounded in the statutory text, structure, and history, concluding that (1) a cellular telephone used for personal purposes may qualify as a "residential

1

subscriber," and (2) text messages fall within the meaning of "telephone calls" under § 227(c)(5). Indeed, there is *no Court within the Second Circuit* that has ruled for a defendant on *either of these issues*. Faced with a similar non-split in authority, the Eastern District of Pennsylvania denied an identical motion last week holding, "Its claimed 'disagreement' rests largely on a handful of out-of-circuit district court decisions, not any conflict within this Circuit, while Plaintiff identifies authority supporting this Court's conclusion that text messages may qualify as 'calls' under the TCPA." *Newell v. Easy Spirit Inc.*, Civil Action No. 25-cv-4270-MRP, ECF No. 48 (E.D. P.A. April 9, 2026), attached as Exhibit 1. This Court should hold the same.

Finally, interlocutory appeal would not materially advance this litigation. To the contrary, it would delay proceedings and promote piecemeal appellate review. Defendant's motion should therefore be denied in its entirety, and any request for a stay should likewise be rejected.

## **LEGAL STANDARD**

Section 1292(b) is a narrow, discretionary exception to the final judgment rule. The Court may certify an order for interlocutory appeal only where it involves (1) "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (citation omitted). Accordingly, § 1292(b) "must be strictly construed" and "only exceptional circumstances" will justify a departure from the final judgment rule. *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) (internal quotations marks and citations omitted).

## **ARGUMENT**

"The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria [of § 1292(b)] are met." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014). And "even when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." *Garber v. Office of the Com'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (quoting *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162-63 (E.D.N.Y. 1999)).

Despite the availability of certification under § 1292(b), "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). As a result, the Second Circuit has cautioned district courts to grant interlocutory certification sparingly. *See, e.g., id.* ("[Interlocutory appeal] is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."). "Certification . . . is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' and is not intended as a vehicle to provide early review of difficult rulings in hard cases." *In re Levine*, No. 94 Civ. 44257, 2004 U.S. Dist. LEXIS 6025, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (citations omitted) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

I.        **Defendant has not shown a substantial ground for difference of opinion.**

    a. *Since McLaughlin, no Court has held that a Cellular Telephone is not Subject to the Protections of the National Do Not Call Registry.*

Defendant cannot show a substantial ground for difference of opinion on the "residential subscriber" issue because the governing legal standard is clear and courts applying it—particularly after *McLaughlin*—have reached a consistent result.

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

That leaves the word "residential," on which Defendant's argument hinges—but that term does not exclude cell phone subscribers. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *Lirones v. Leaf Home Water Sols.,*

*LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers, including Mr. Wilson, fit that description.

This is because the TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Id.* at *14; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a *residential telephone line*, as Congress used that term in the preceding subsection.'" *Id*.

There is no persuasive alternative reading of the statute. Indeed, every court to address this issue after the Supreme Court's ruling in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), has reached the exact same conclusion—that cellular telephone numbers are protected under the TCPA's National Do Not Call Registry provision:

> Defendant's interpretation of a residential subscriber ignores the fact that "residential" modifies "subscriber," meaning that the definition is tethered to a type of person rather than a type of technology. And although Defendant points out that Congress has occasionally used the term "cellular telephone service" and could

have done so here if it intended for the TCPA to cover cell phones, Defendant overlooks the fact that Congress has also used the term "residential telephone line" elsewhere in the TCPA. Put differently, Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber. Thus, Defendant's argument is misplaced.

Further, while not determinative, the Court also notes that Plaintiff's interpretation of "residential subscriber" comports with the overall purpose of the TCPA…Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same. Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber—even when the cell phone is the sole phone for home use, as is increasingly the case. In other words, Defendant's interpretation would tie residential privacy interests to an obsolete and disappearing phone technology.

*Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7-9 (N.D. Ga. Aug. 7, 2025) (cleaned up); *Ferrell v. Colourpop Cosmetics, LLC*, No. 2:25-cv-01324, 2025 U.S. Dist. LEXIS 140893, at *16-17 (C.D. Cal. July 22, 2025) ("In 1991, when the TCPA was enacted, Webster's Dictionary defined 'residential' as 'used as a residence or by residents.' *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) (quoting Residential, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY).

Indeed, this Court's decision based on the plain meaning of the statute—that "the term 'residential' modifies 'subscriber,' meaning that the TCPA applies to a certain type of phone subscriber rather than to a particular type of phone technology," and that a "residential subscriber is a person who uses their phone for activities associated with their private, domestic life." *Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026). Critically, the Court did not treat this issue as a close or unsettled question. To the contrary, it found Defendant's argument "unavailing" and held that a residential subscriber "is not limited to a residential landline but rather can include a person who uses a cell phone for personal use." This

6

conclusion—grounded in the statutory text and ordinary meaning—reflects a straightforward application of established interpretive principles, not a legal question subject to substantial doubt. In short, where courts applying the same statutory text and interpretive framework have reached the same conclusion—particularly after *McLaughlin*—there is no "substantial ground for difference of opinion," only Defendant's disagreement with the result.

**b.  *No Court in the Second Circuit has ever held that a Text Message is not a "Call" for Purposes of the TCPA.***

Easy Spirit also fails to show a substantial ground for difference of opinion because there is no circuit split on the issue of whether text message calls are "calls" within the meaning of the TCPA. In fact, the only Court of Appeals to have directly addressed the issue after *Loper Bright*, the Ninth Circuit, has held that text messages are "calls." *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026).

Easy Spirit talks about disagreement among district courts, not disagreement among circuits. That is a major problem for a § 1292(b) application. Courts traditionally find a substantial ground for difference of opinion where the *circuits* are in dispute on the question *and* the court of appeals of the circuit has not spoken on the point. *See Blum v. Caldwell*, 446 U.S. 1311, 1316 (1980); *Falco v. Nissan N. Am. Inc.*, 108 F. Supp. 3d 889, 892 (C.D. Cal. 2015). Here, the circuit courts of appeal are not in dispute on the question. What's more, there is no district court split within the Second Circuit either. *In re Goody's Fam. Clothing, Inc.*, No. CIV.A. 09-409RMB, 2009 WL 2355705, at *2 (D. Del. July 30, 2009) ("[N]o split of authority exists within the Third Circuit."). That alone should give this Court pause on the instant application.

There is only one circuit court of appeal to have addressed Easy Spirit's argument after *Loper Bright*, and it agrees with this Court's decision. In *Howard v. Republican Nat'l Comm.*,

7

164 F.4th 1119, 1124 (9th Cir. 2026), the Ninth Circuit held, post-*Loper Bright* and under *de novo* review, that a "text message" constitutes a "call" within the meaning of the TCPA. The court confirmed that "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Id.* (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). Critically, the Ninth Circuit concluded that the result would be the same "even in the absence of *Chevron* deference." *Id.* at 1123.

Defendant may argue that *Howard* specifically addressed § 227(b), not § 227(c)(5). But *Howard*'s reasoning on the meaning of "call" directly undercuts Easy Spirit's claim that there is a real appellate-level dispute about whether text message calls can be "calls" under the TCPA. As a district Court has held directly addressing this argument and its application to *Howard*:

> While both cases reached these decisions in the context of analyzing § 227(b) of the TCPA, rather than § 227(c)(5) at issue here, neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings. Both cases state that their holdings apply to "the TCPA," and that is how this Court interprets them.
>
> Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is reference in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

8

*Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *7-*8 (C.D. Cal. Mar. 11, 2026) (cleaned up).

The Second Circuit has already spoken to this issue pre-*Loper Bright* but applying similar reasoning. This starts with the Second Circuit Court of Appeals. First, in *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 280 (2ⁿᵈ Cir. 2020) continued, "[i]t is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].' *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016). Moreover, an unwanted text message is, for standing purposes, an injury-in-fact. *See Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (noting that 'text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA')."

It is no surprise then that "in this Circuit, district courts have treated text messages as 'calls' within the meaning of the TCPA. *See Melito v. Am. Eagle Outfitters, Inc.,* No. 14 CV 02440, 2015 U.S. Dist. LEXIS 160349, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) ('The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text.'); *see also Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 135 (E.D. NY. 2015)." *Krady v. Eleven Salon Spa*, 2017 U.S. Dist. LEXIS 120139, *7 (E.D. N.Y. 2017). "Courts have consistently recognized that a text message constitutes a call within the meaning of the statute. *See, e.g., Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 U.S. Dist. LEXIS 47138, 2019 WL 1299939, at *2 (S.D.N.Y. Mar. 21, 2019). Therefore, the text

9

message that Plaintiff received qualifies as a call for which TCPA liability may lie." *Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228, *13 (E.D. NY. 2019).

Indeed, as this Court recognized in its decision Judge Engelmayer rejected the exact argument by another TCPA defendant in this Court on December 5, 2025 in another case involving Mr. Wilson in *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 *5 (S.D.N.Y. Dec. 5, 2025) holding:

> In *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 88 (2d Cir. 2019), the Circuit addressed whether plaintiffs' receipt of unsolicited text messages, absent any other injury, was sufficient to demonstrate injury-in-fact to confer Article III standing…It reasoned, in part: '[T]ext messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA.'" (Order at 12-13.)

> Limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure. It would also be at odds with the Second Circuit's recognition that 'the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA.'" (Order at 15.)

There is no grounds for an appeal outside of the normal course as the uniform authorities on this point show that the word "call" is fundamentally compatible with text message calls under the TCPA. There is no reasonable appellate-level authority holding otherwise. This is especially persuasive where Easy Spirit is arguing not merely that § 227(c)(5) is narrower in some procedural way, but that "telephone call" as such categorically excludes text messages. The Second Circuit's recognition that "calls" encompass texts under "the TCPA" forecloses that position.

Post *McLaughlin* and *Loper Bright*, the majority of courts have concluded that under the TCPA text messages are calls. *See Rubin v. Staples, Inc.*, No. 2:2545515 (WJM), 2026 U.S. Dist. LEXIS 70359, at *17 (D.N.J. Mar. 31, 2026) ("[T]he Court concludes that "telephone call" can

encompass text messages for purposes of § 227(c)(5)"); *Rabbitt v. Rohrman Midwest Motors*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *8 (N.D. Ill. Mar. 27, 2026) ("Based on the court's independent examination of the TCPA, it agrees with the FCC that § 227(c)(5) applies to text messages."); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026) ("The structure of the entire TCPA leads to the conclusion that §227(c) does include text messages."); *McGonigle v. Teleflora LLC*, No. 1:25-cv-807, ECF 66 (E.D. Va. Mar. 13, 2026) (denying motion to dismiss premised on DNCR not encompassing text message calls); *McGonigle v. Shopperschoice.Com*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026) ("The Court finds that [] 227(c)(5) applies to cellphone text messages."); *Hernandez v. Bedford Dental*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208, at *3 (N.D. Ill. Feb. 4, 2026) ("[The court] declines to hold that the TCPA does not apply to text messages."); *Alvarez v. Fiesta Nissan*, 2026 U.S. Dist. LEXIS 14155, at *10 (S.D. Tex. Jan. 26, 2026) ("[P]lain-language reading suggests that to send a text message is to 'try to get or to get into communication by telephone'"); *Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026) ("[I]nterpreting § 227(c) to include text messages is consistent with numerous district court decisions."); *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025) ("The [DNCR] statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of such solicitations."); *Dilanyan v. Hugo Boss Fashions*, No. 2:25-CV-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *8 (C.D. Cal. Dec. 3, 2025) (concluding "a text message is a 'call'" under § 227(c)); *McGonigle v. Office Depot*, No. 25-80069, 2025 U.S. Dist. LEXIS 231061, at *6 (S.D. Fla. Nov. 25, 2025) ("[A] text message is a call for the purpose of the TCPA"); *Esquivel v. Mona Lee*, No. 3:25-cv-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841, at *8 (S.D. Cal. Nov. 24, 2025)

(denying motion to dismiss finding § 227(c) applies to text messages); *Mujahid v. Newity*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (DNCR provision applies to text message calls); *Evers v. CampaignSidekick, LLC*, No. 24 CV 11067, 2025 U.S. Dist. LEXIS 201112, at *9 (N.D. Ill. Oct. 10, 2025) ("[A] text message is also a 'call' for the purpose of Evers's claim under § 227(c)(5)"); *Wilson v. MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, at *9 (N.D. Cal. Oct. 7, 2025) ("[N]othing in the text, structure, or purpose of the TCPA suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp.*, No. 25-CV-22336, 2025 U.S. Dist. LEXIS 183986, at *12 (S.D. Fla. Sep. 18, 2025) ("[A] text message constitutes a 'call' under the TCPA"); *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025) ("A telephone solicitation can be a call or text message."); *Wilson v. Skopos Fin.*, No. 6:25-CV-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *12 (D. Or. July 21, 2025) ("[U]nsolicited text messages invade the privacy and disturb the solitude of their recipients" and are "within the purview of the DNC Registry's protections."); *Wilson v. Hard Eight Nutrition*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025) (applying DNCR provision to text messages); *Hudson v. Palm Beach Tan*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *16-17 (M.D.N.C. Aug. 12, 2024) ("[T]he statutory text … support[s] the conclusion that text messages can establish the basis for a claim under § 227(c)(5).").

Courts in more than thirteen districts and the only circuit court to directly address the issue, the Ninth Circuit, have held the DNCR provision covers text messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026) (reaffirming text messages are "calls" post *Jones*). The Supreme Court has also weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'").

12

What's more, there is no intra-circuit disagreement at all, either. Post *Loper Bright* and *McLaughlin*, *every* court in the Second Circuit to address whether text messages are actionable under § 227(c)(5) *has agreed with Plaintiff*, including this one. No court in the Second Circuit has held the opposite. That is the opposite of "substantial ground for difference of opinion" in the forum, the Second Circuit, that matters most. Even if some out-of-circuit district courts disagree, there is no disagreement among courts in this Circuit, and no disagreement among the Circuits themselves. Where the Second Circuit has already recognized that "calls" encompass text message calls, and every district court in this Circuit to confront § 227(c)(5) has ruled for Plaintiff's position, Defendant cannot show the sort of genuine uncertainty that justifies immediate appellate review.

## II.    None of Defendant's other reasons for a supposed difference of opinion are particularly availing.

Nor are any of the Defendant's other authorities particularly availing, either. District court disagreement, by itself, is not the same thing as a substantial ground for difference of opinion. That is particularly so where, as here, there is no circuit split, the only court of appeals to directly address the issue is on Plaintiff's side, and all relevant courts in this Circuit agree with Plaintiff.

Easy Spirit's cited cases, almost all of which it already brought up in its numerous supplemental briefings on the issue, do not establish a genuine split of reasoned authority. The newer and better-reasoned decisions, especially in this Circuit and in the Ninth Circuit, have engaged the text, structure, and purpose of the statute more fully and reached the opposite conclusion by applying generally accepted principles of statutory interpretation to conclude that text messages comfortably fit within the contemporary definition of a "call" at the time the

13

TCPA was enacted. Section 1292(b) does not exist to resolve every emerging district court disagreement immediately.

In fact, the Defendant's authorities largely reflect a kind of jurisprudential echo chamber, with courts repeating inherited conclusions rooted in underdeveloped, faulty reasoning. Courts that have undertaken comprehensive statutory analysis have consistently concluded that the statutory text, structure, and purpose support the inclusion of text messages.

Nor does the death of *Chevron* deference change the fact that this Court arrived at its conclusion by addressing ordinarily principles of statutory interpretation, precisely as *Loper Bright* counseled. The extensive briefing in this matter shows how a text message comfortably fits within the definition of a "call" under the TCPA, even after *Loper Bright*. All those decisions were available to the Court when it first ruled; there is no new Supreme Court authority altering the analysis that this Court already undertook. Indeed, *Howard* already addressed the "call" issue after *Loper Bright* and held that the same result follows, even under *de novo* review and in the absence of *Chevron* deference. 164 F.4th at 1123.

The *Howard* court concluded that it was clear from *Satterfield*'s substantive analysis that the conclusion would be the same, even in the absence of *Chevron* deference. *Id.* That is because the statute's text, structure, and purpose still point toward including texts, even without any deference to the FCC. The ordinary meaning of "call" as a communication by telephone encompasses text messages, including in the very dictionaries themselves. *Taha*, 2026 U.S. Dist. LEXIS 54376, at *7. The statutory definition of "telephone solicitation" as a "call or message" confirms the breadth of the term. 47 U.S.C. § 227(c)(1); *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *3 (N.D. Ill. Mar. 27, 2026) (addressing the interplay between the term "telephone solicitation" and "telephone call"). And the statute's command

14

against making a "telephone solicitation" further supports the inclusion of text-based calls. *Id.* § 227(c)(3)(F). Defendant's "sea change" rhetoric is especially unpersuasive because the post-*Loper Bright* appellate authority, all of which this Court already considered cuts against it, not for it.

A defendant cannot convert "we want appellate guidance" into "there is substantial ground for difference of opinion." *Bradley v. Amazon.com*, No. 17-CV-1587, 2023 WL 7196427, at *1 n.1 (E.D. Pa. Sept. 20, 2023); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 657 F. Supp. 2d 504, 507 (D.N.J. 2009) ("[A] party's mere disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion.'"). Section 1292(b) does not authorize certification merely because a losing party believes the issue is important, recurring, or worthy of appellate attention, even if it is an issue of first impression in this Circuit (which it is not).

### III.    Defendant's repeated reliance on *Dilanyan* only underscores why certification should be denied.

Easy Spirit repeatedly invokes *Dilanyan v. Hugo Boss Fashions, Inc.*, as support for the proposition that this issue required interlocutory review. But, in *Dilanyan*, after the District Court certified the issue, the Ninth Circuit *denied* the petition for interlocutory review. *Dilanyan*, ECF No. 7-1. That history is devastating to Easy Spirit's position. And it matters even more because, by the time the Ninth Circuit denied the *Dilanyan* petition, it had already issued *Howard*, confirming that texts are "calls" under the TCPA.

This Court need not speculate about the Ninth Circuit's reasoning. *Dilanyan*'s procedural history shows that, even after certification of an identical question, another court of appeals refused interlocutory review. At minimum, that history defeats Defendant's suggestion that

15

certification is the obvious or necessary course. And given *Howard*, the Ninth Circuit's refusal is entirely consistent with Plaintiff's position that there is no genuine uncertainty here.

**IV.     Interlocutory review would not materially advance the termination of the litigation, and a stay should be denied.**

Because Defendant cannot show substantial grounds for disagreement, the Court need not decide the third prong. But even so, an immediate appeal will not materially advance the progress of this case. Quite the opposite. An immediate appeal will hinder its progress in what is likely to be, if *Dilanyan* is any guide, a refusal by the Second Circuit to hear any certified question.

Finally, because certification is unwarranted, there is no basis to halt the case. A stay is not automatic upon the filing of an application for interlocutory appeal. If the application is denied, the stay request falls with it. Even otherwise, Defendant has not shown that the extraordinary remedy of pausing the case pending an application for interlocutory appeal is justified merely because it wants appellate review of a legal issue it lost.

**CONCLUSION**

Defendant's bid for interlocutory review should be denied. There is no circuit split, this Court's decision is in line with others in this Circuit and the Second Circuit itself, and the only Court of Appeals to have directly addressed the issue after *Loper Bright* has concluded that text messages are calls under the TCPA. Defendant's motion is simply an attempt to obtain premature appellate guidance on an issue that can be reviewed in the ordinary course after final judgment. The motion should be denied.

16

Dated: April 17, 2026

/s/ Anthony I. Paronich
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the putative Class*

17